PEOPLE ex rel. SCHULUM v. HARBURGER et al., Board of Coroners.

(Supreme Court, Appellate Division, First Department.   May 7, 1909.)

1. MUNICIPAL CORPORATIONS (§ 218*)— CIVIL SERVICE — CLERK OF CORONER— "MEMBER OF VOLUNTEER FIRE DEPARTMENT."

Under Civil Service Law (Laws 1899, p. 809, c. 370), § 21, as amended by Laws 1904, p. 1694, c. 697, providing that no person holding a position who shall have been a member of a volunteer fire department shall be removed from such position except for cause shown after hearing, a coroner's clerk, who became a member of the fire department for the express purpose of taking advantage of the act, and who was not a resident of the district in which he became a member, was not a "member of a volunteer fire department" within the meaning of the act.

. [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 541; Dec. Dig. § 218.*]

2. MUNICIPAL CORPORATIONS (§ 216*)—CIVIL SERVICE—EXEMPTIONS—CORONER'S CLERK—"ELECTIVE JUDICIAL OFFICER."

Within the meaning of Civil Service Law (Laws 1899, p. 802, c. 370), § 12, providing that one clerk of each elective judicial officer shall be exempt from civil service, a coroner is an "elective judicial officer."

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 216.*]

3. MUNICIPAL CORPORATIONS (§ 218*)—CIVIL SERVICE—EXEMPTIONS—VOLUNTEER FIREMAN.

A former fireman appointed by a coroner as his private clerk without civil service examination, when removed by the coroner's successors without cause, cannot rely on Civil Service Law (Laws 1899, p. 809, c. 370), § 21, as amended by Laws 1904, p. 1694, c. 697, providing that volunteer firemen shall not be removed except for cause, since under Civil Service Law (Laws 1899, p. 802, c. 370), § 12, under which he was appointed, exempting from its operation one clerk of each judicial officer and one secretary of an officer authorized by law to appoint one, whether the clerk be considered as a clerk of a judicial officer or as a secretary of an officer, the appointment is personal to the coroner and dies when he ceases to hold office.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 218.*]

Appeal from Special Term, New York County.

Petition by the People, on the relation of Joseph Schulum, against Julius Harburger and others, Board of Coroners, for mandamus to compel the reinstatement of a coroner's clerk. From an order granting a peremptory writ of mandamus and from an order denying the defendants' motion for a new trial, defendants appeal. Reversed, and writ dismissed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGH-TON, McLAUGHLIN, and SCOTT, JJ.

Theodore Connoly, for appellants.

Julius M. Mayer, for respondent.

SCOTT, J. Defendants appeal from an order granting a peremptory writ of mandamus directing them to reinstate the relator in the position of coroner's clerk, and from an order denying a motion for a new trial of the issues of fact.

On August 1, 1904, the relator was appointed by one Gustave Scholer, then a coroner of the city of New York, as private clerk at a salary of $2,000 per annum. On January 1, 1906, the said Scholer having ceased to be a coroner, and a new board of coroners having come into office, the relator was summarily removed from the position he then held without charges or trial. On May 23, 1906, he sued out a writ of alternative mandamus for the purpose of securing his reinstatement. Issue was joined thereon, and the matter came on for trial before the court and a jury, and a verdict rendered in favor of the relator by direction of the court, whereupon, after a motion for a new trial had been made and denied, the order now appealed from was entered directing the relator's reinstatement. His contention is that he was protected from removal because he had been an active member of a volunteer fire company in the borough of Richmond, and known as the Richmond Hook & Ladder Company No. 4, at the time of its disbandment on October 1, 1905, on which date the paid fire department of the city of New York was extended to the fire district formerly protected by said Richmond Hook & Ladder Company No. 4. The statute upon which relator relies is section 21 of the Civil Service Law (chapter 370, p. 809, Laws 1899), as amended by chapter 697, p. 1694, Laws 1904, reading as follows:

"No person holding a position by appointment or employment in the state of New York, or in the several cities, counties, towns or villages thereof * * * who shall have served the time required by law in the volunteer fire department of any city, town or village in the state, or who shall have been a member thereof at the time of the disbandment of such volunteer fire department, shall be removed from such position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right to such employé or appointee to a review by writ of certiorari."

The reasons which led the Legislature to extend this especial immunity from arbitrary removal to those who have been volunteer firemen are obvious. Formerly the only protection against fire was that furnished by volunteers, who served without pay, and in so doing exposed themselves to the risks and discomforts attendant upon such service. By degrees paid fire departments were established in the larger cities, but the volunteer system continued, as it still continues, in rural and suburban communities. The obvious purpose of section 21 of the civil service law was to extend to those who had thus voluntarily devoted themselves to this particular public service, as a sort of reward and compensation, immunity from arbitrary removal. The dominating note of the section is that this especial immunity is extended as a reward for service performed, and it would be a clear per-

version of the intent of the act to extend it to those who have acquired mere nominal membership in a volunteer department without actual rendition of service or any evidence of an intention to serve. The facts attending the relator's membership in the Richmond Fire Department show clearly that he never became a member of the fire company in good faith, and when he joined neither expected nor intended to perform any fire duty, and in point of fact never did perform any. When the present city of New York was created, the former cities of New York and Brooklyn were served by paid fire departments, but Richmond and Queens counties, being rather suburban than urban, were served by volunteer fire departments. Section 722 of the Greater New York Charter (chapter 378, p. 252, Laws 1897) provided, among other things, as follows:

"The paid fire department system shall as soon as practicable be extended over the boroughs of Queens and Richmond by the fire commissioner, and thereupon the present volunteer fire departments now maintained therein shall be disbanded."

Evidence was offered on the part of the defendants showing that early in the year 1905 the proper municipal authorities took up the subject of carrying the foregoing provision of the charter into effect, and that Richmond Hook & Ladder Company No. 4 was one of the volunteer companies which it was proposed to discontinue and disband. That company had, prior to June 1, 1905, 23 members. The initiation fee for each member was $2, and every person elected was required to provide himself with a uniform within 90 days after his election. On June 1, 1905, the by-laws were suspended or amended so as to make radical changes in their requirements as to new members. The initiation fee was increased to $10, and other charges were imposed, making the total payment by a new member $13.25, instead of $2, as theretofore. The requirement as to providing a uniform was extended 30 days, and the limit of membership was raised to 999. Thereupon at the same meeting, which was adjourned several times for the purpose, 985 new members were elected, of whom the relator was one, and among whom were a number of others who have in other proceedings (heretofore unsuccessfully) striven to avail themselves of the protection of the statute. The relator never procured a uniform because the company was disbanded within 120 days after he was elected. He attended, as he says, one fire during that time, but whether as a spectator or a working fireman does not appear. He is extremely frank in telling why he joined the company. He says that he has always lived and voted in Manhattan, and lived there when he joined the fire company. He never lived in Richmond county, although he visited a friend there during the summer of 1905. He testified that he went to Richmond county for the purpose of joining the fire department, and that his object in doing so was to become a volunteer fireman and take advantage of the civil service law so as to protect himself against removal from the position he then held.

It is perfectly clear that the relator never joined the fire department in good faith with the intention of performing service therein, but that his action in that regard was a mere sham, taken for an ulterior purpose, and that he never brought himself within the spirit

and intent of the act upon which he relies, and if the court had submitted the question of good faith to the jury, as defendants requested, the inevitable verdict must have been that he did not join the fire company in good faith. Any other verdict would have been against the evidence. We concur with the views expressed by Mr. Justice Kelly (Matter of Bell, N. Y. Law J., January 18, 1906) when he said:

"I think the preference in employment and the right to a hearing before removal given by section 21 of the civil service law to members of volunteer fire departments, and to persons who are members at the time of disbandment of such volunteer fire departments, applies to active members who perform the duties of volunteer firemen. As to such persons who expose life and limb for the protection of the public the Legislature might well grant them preference and privileges not enjoyed by others. I do not interpret the provision of law cited to mean that a man obtains such preference over his fellows simply because his name is inscribed on the roll of a fire company in some distant part of the state. Such a construction of the statute would be unjust to the bona fide volunteer firemen and to the public."

The relator's membership in the Richmond fire company was a mere sham and fraud, and did not bring him within the clear intent and reason of the statute, and his application for a mandamus should have been denied on that ground alone.

There are other reasons, however, why he must fail. The relator was not appointed by the board of coroners, nor was he appointed pursuant to section 1571 of the revised charter (Laws 1901, p. 646, c. 466), which authorizes the coroners in each borough to appoint a clerk, as was the case with the relator in People ex rel. Hoefle v. Cahill, 188 N. Y. 489, 81 N. E. 453. Relator was appointed by Coroner Scholer alone, and his appointment was as "private clerk." He never passed any civil service examination, and his appointment was authorized by section 12 of the civil service law, which reads as follows:

"The Exempt class. The following positions shall be included in the exempt class: * *. * (3) One clerk and one deputy clerk, if authorized by law, of each court, and one clerk of each elective judicial officer."

The coroners are elective judicial officers (People v. Jackson, 191 N. Y. 293, 84 N. E. 65, 15 L. R. A. [N. S.] 1173), and each coroner is therefore entitled to appoint, without reference to any civil service list, one personal clerk (Goldencranz v. Municipal Civil Service Commission, N. Y. Law J., Nov. 8, 1902; Munch v. City of New York, 47 Misc. Rep. 128, 93 N. Y. Supp. 509; O'Connor v. City of New York, 48 Misc. Rep. 407, 95 N. Y. Supp. 504). Such an appointment is personal to the judicial officer making the appointment and dies when he ceases to hold office. People ex rel. Whitman v. Goldenkranz, 38 Misc. Rep. 682, 78 N. Y. Supp. 267. In the very nature of things relator's position as private clerk to Coroner Scholer came to an end when Scholer ceased to be coroner, and consequently relator held no position on January 1, 1906, and there is none to which he can be reinstated. Furthermore, his position as private clerk to an individual coroner is strictly analogous to, if not identical with, that of private secretary, to which, by express exemption, section 12 of the civil service law does not apply.

The result is that the orders appealed from must be reversed, and the writ dismissed, with $50 costs to the defendants. All concur.