## In re FLYNN.

(Supreme Court, Special Term, Queens County. December 4, 1909.)

1. MANDAMUS (§ 168*)—PRESUMPTIONS.

In mandamus to compel a city comptroller to pay the salary of certain coroners' physicians, it will be presumed, in the absence of a showing to the contrary, that petitioners were eligible under the civil service law (Laws 1899, p. 795, c. 370) and the rules and regulations of the civil service commission at the times of their appointment, and that the appointing officers acted in compliance with existing laws and within their powers in making the appointments.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 372; Dec. Dig. § 168.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** CORONERS (§ 4*)—CORONERS' PHYSICIANS—APPOINTMENT.

Greater New York Charter (Laws 1897, p. 547, c. 378) § 1570, providing for the appointment of three coroners in the borough of Queens, was amended by Laws 1901, p. 645, c. 466, § 1570, providing for the election of two coroners in that borough. Section 1571, as re-enacted in 1901 (Laws 1901, p. 646, c. 466), provides that each of the coroners should possess all of the powers and perfom all of the duties vested or imposed on coroners by any existing law relating to the city of New York, and by the law of the state; and Laws 1882, p. 429, c. 410, § 1769, declares that each coroner of the city on assuming office shall appoint a qualified physician who shall be known as the coroner's physician. *Held* that, after the amendment of the charter, there could only be two coroners' physicians in the borough of Queens.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

**3.** CORONERS (§ 4*)—CORONERS' PHYSICIANS—APPOINTMENT—AUTHORITY TO APPOINT.

The board of estimate and apportionment and the board of aldermen of the city of New York authorized to fix salaries of officials and clerks in the administration of the city government by Greater New York Charter (Laws 1901, p. 32, c. 466) § 56, as amended by Laws 1902, p. 1067, c. 435, were not thereby authorized to appoint coroners' physicians, the power to appoint whom is expressly conferred on the coroner by Laws 1882, p. 429, c. 410, § 1769.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

**4.** CORONERS (§ 4*)—CORONERS' PHYSICIANS—APPOINTMENT—TERM.

Under Laws 1882, p. 429, c. 410, § 1769, providing that each coroner in the city of New York on assuming office shall appoint a qualified physician, who shall be known as a coroner's physician, the physician's term of office is "coterminous with that of the coroner appointing him."

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

**5.** OFFICERS (§ 1*)—"PUBLIC OFFICER"—CORONER'S PHYSICIAN.

A coroner's physician appointed by him, as authorized by Laws 1882, p. 429, c. 410, § 1769, is a subordinate of the coroner and is not a public officer, exercising as he does no part of the sovereign power.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 1, 4; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 6, pp. 4933–4951; vol. 8, pp. 7237, 7772, 7773.]

**6.** CORONERS (§ 4*)—CORONERS' PHYSICIANS—ELIGIBILITY.

On the election of a coroner, the office of coroner's physician should be filled by appointment by the coroner from the eligible list in the office of the civil service commission, or by reappointment of the person who had been selected by his predecessor, who would also be eligible for appointment under the civil service law (Laws 1899, p. 795, c. 370) and the rules and regulations of the civil service commission.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

**7.** CORONERS (§ 4*)—CORONERS' PHYSICIANS—APPOINTMENT.

Where a coroner has appointed a physician as he is authorized and required to do on taking office, his power of appointment is exhausted, and he cannot make a second appointment during his term; the filling of any vacancy in the office being within the jurisdiction of the board of coroners, as provided by Laws 1882, p. 429, c. 410, § 1769.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

**8.** CORONERS (§ 4*)—CORONERS' PHYSICIANS—APPOINTMENT—STATUTE—EXERCISE OF POWER.

So much of Laws 1882, p. 429, c. 410, § 1769, requiring each coroner in the city of New York to appoint a coroner's physician, as requires the appointment to be made on the coroner "assuming office," is merely directory,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so that the exercise of a power may be compelled in public interest, though not performed at the time specified.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

9. CORONERS (§ 7*)—PHYSICIANS—APPOINTMENT.

That the written evidence of the appointment of a coroner's physician was not filed in the office of the board of coroners, as required, was not fatal to the physician's right to recover salary from the city.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 7.*]

10. CORONERS (§ 4*)—PHYSICIANS—APPOINTMENT—CERTIFICATION.

On appointment of a coroner's physician, the evidence of the appointment should be immediately filed in the office of the board of coroners and appointment certified to the municipal civil service commission.

[Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

Application by Timothy J. Flynn for a writ of mandamus against Herman A. Metz, as comptroller of the city of New York, in which William H. Nammack and Walter G. Frey intervened, to compel defendant comptroller to pay relator and interveners salary earned as coroner's physician in the borough of Queens. Writ granted as to relator and intervener Frey, and denied as to intervener Nammack.

Monfort & Faber, for relator.

Francis K. Pendleton, Corp. Counsel, and Edward S. Malone, Asst. Corp. Counsel, for defendant.

Lord, Day & Lord, for William H. Nammack.

Gregg & Frank, for Walter G. Frey.

GARRETSON, J. The relator brings this proceeding to compel the comptroller to pay to him the sum of $500 as salary which he claims to be entitled to as coroner's physician in the borough of Queens for the months of March, April, May, and June, 1909. Upon the hearing first had, William H. Nammack and Walter G. Frey appeared by counsel, and asked to be permitted to intervene, and an order was thereupon made bringing them into the proceedings and making them parties thereto. The reason for the appearance of the interveners is that each claims to have a cause of grievance similar to the applicant against the defendant for the withholding of his salary as coroner's physician in the borough for the same period of time. Each of the interveners asks that he may receive the same relief to which the relator's application is directed and upon practically the same grounds. Affidavits and accompanying papers have been presented by the several parties, and, after oral argument, the record thus made is submitted for judicial consideration and determination. Preliminarily it may be stated that there are no disputed questions of fact; the questions arising being exclusively of law based upon the facts which the record discloses.

It appears that the origin and history of the relations of the several parties claimant as coroners' physicians to the service of the borough is as follows: Drs. Flynn and Nammack were appointed on or about January 1, 1898, the former by Coroner L. Ruoff, Jr., and the latter by Coroner Philip T. Cronin. On or about January 1, 1902, Dr.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Flynn was reappointed by Coroner Ruoff and Dr. Nammack was appointed by Coroner Samuel D. Nutt. On or about January 1, 1906, Drs. Flynn and Nammack were each appointed by Coroner Samuel D. Nutt. These several appointments were made by the coroners of the borough named, who were then in office, and coincidently with the beginning of their official terms. It is stated by Coroner Nutt in an affidavit made by him and submitted in behalf of Dr. Flynn:

"That the appointment made by me January 1st, 1906, of Timothy J. Flynn as coroner's physician preceded the similar appointment on the same day by me of William H. Nammack to a similar position."

From January 1, 1898, to the time of the resignation as hereinafter stated, Dr. Benjamin G. Strong also acted as a coroner's physician under an original appointment made by then Coroner Samuel Guy, and presumably by subsequent reappointments. Dr. Strong resigned his position on January 1, 1907, and on February 19, 1907, the then board of coroners appointed Dr. Frey to fill the vacancy temporarily, which appointment was made permanent by said board on June 1, 1907, to continue until January 1, 1910, the end of the term of the prior incumbent. It also appears that on April 19, 1907, Coroner Ambler individually appointed Dr. Frey to the same position. These appointments of Dr. Frey were made from the appropriate eligible list in the office of the municipal civil service commission. It is presumed that all of the other appointees were eligible under the civil service law (Laws 1899, p. 795, c. 370), and the rules and regulations of the said commission adopted thereunder at the times of their appointment, respectively, as nothing appears to the contrary. For like reason, it must also be presumed that the appointing officers acted in compliance with existing law, and within their powers in making the several appointments, unless the contrary appears.

The defendant comptroller has refused to pay the salaries of the several parties on the ground that, under the charter of the city as amended and other relevant statutes, there can be but two coroner's physicians in the borough of Queens. By section 1570 of the Greater New York Charter of 1897 (Laws 1897, p. 547, c. 378), it was provided that four coroners should thereafter be elected in the borough of Manhattan, two in the borough of the Bronx, three in the borough of Queens, and two in the borough of Richmond for the term of four years. At the general election in 1897 three coroners were elected in the borough of Queens, whose terms of office began January 1, 1898. By the amended charter of 1901 (Laws 1901, p. 645, c. 466), section 1570, above referred to, was amended by providing that thereafter there should be elected two coroners in the borough of Queens. It was also provided by section 1571 of the charter of 1897, and has been re-enacted in said section by the amended charter of 1901, that each of said coroners shall possess all the powers and perform all the duties vested in or imposed upon coroners by any existing laws relating to coroners in the city of New York as theretofore known and bounded, or by any law of this state. Section 1769, p. 429, c. 410, Laws 1882, relating to the then city of New York (sometimes called the "Consolidation Act"), reads as follows:

"Each coroner of said city shall, on assuming office, appoint a qualified physician who shall be a resident in said city and shall be known as a 'coroner's physician.' Any vacancy in the office of coroner's physicians shall be filled by the board of coroners. The board of coroners for cause, may remove the physicians appointed by them."

This section has remained in effect and is applicable to the greater city.

At the general election in the year 1901, and again in 1905, two coroners were elected and are now holding office in the borough of Queens.

We are therefore confronted with the situation that there are three persons, parties to this proceeding, each claiming to be a coroner's physician, and the question arises whether there can be under existing law three coroner's physicians, and, if not more than two, which of the three is a mere claimant, and should be held not to be entitled to the position. It may be assumed that none of these persons has derived any right or title to the position merely because he has for a greater or less period of time acted therein and received the emoluments thereof. Holding this, as I do, as a matter of law, I am also of the opinion that no such right or title has accrued to any of them from the fact that he claims under color of appointment or because appropriations have been made year after year for his salary by the board of estimate and apportionment, or for the reason that his name has been certified upon a pay roll from time to time by the board of coroners, and his salary has been paid to him each month by the defendant comptroller until March of the current year. These circumstances have doubtless arisen from a lack of knowledge of the true situation in Queens and perchance from a misconception of the law. While the board of estimate and apportionment alone has power to fix the annual appropriation to pay the salaries of officials and clerks in a department of the city government, it has not been vested with the power to appoint to the office or position the persons to whom such salaries are to be paid. It seems that the power to fix salaries (with certain exceptions not germane to this proceeding) is conferred upon the board of estimate and apportionment and the board of aldermen. Charter 1901, § 56, as amended by Laws 1902, p. 1067, c. 435. The point last considered was urged upon the argument, and is, I think, conclusively disposed of by section 1769, p. 429, c. 410, Laws 1882, above cited, which in terms confers the power of appointment of a coroner's physician upon the coroner. This power was directed to be exercised by each coroner upon assuming office and by inference when exercised made the term of the physician coterminous with that of the appointing officer.

This construction I think is warranted by the language of the section, and is reasonable. The physician is a subordinate of the coroner, acts under the direction of the coroner, and, having in mind the character of the service rendered by him, may be regarded as bearing to some extent a confidential relation to his superior. He exercises no part of the sovereign power, and hence is not a public officer. 23 Am. & Eng. Encyc. of Law (2d Ed.) 322, and authorities cited in the notes. A practical reason why each coroner should have a physician of his

own selection can therefore be readily apprehended. See People ex rel. Williams v. Zucca, 36 Misc. Rep. 260, 73 N. Y. Supp. 311; People ex rel. Whitman v. Goldenkranz, 38 Misc. Rep. 682, 78 N. Y. Supp. 267. In the ordinary operation of municipal affairs there can be no difficulty in filling the position at the beginning of the term of each coroner by appointment from the eligible list in the office of the civil service commission (the position having been in the competitive class since April 3, 1898) or by the reappointment of the person who had been selected by his predecessor, who would of necessity be also eligible for appointment under the civil service laws and the rules and regulations of that commission.

Having reached the conclusion that the position of coroner's physician is coterminous with that of the coroner appointing him, it is not of essential importance what occurred prior to the beginning of the terms of Coroners Nutt and Ambler, which commenced January 1, 1906. The appointment of Dr. Flynn as coroner's physician by Coroner Nutt on that date was a valid exercise of power, and the later appointment by him of Dr. Nammack was a nullity, for the power of appointment had then been exhausted. See Matter of Jarvis v. Waterbury, 84 Hun, 462, 32 N. Y. Supp. 389; Brown v. Woodruff, 32 N. Y. 361. Irrespective of the question whether Dr. Strong was holding under a valid appointment at the time of his resignation, the appointment of Dr. Frey was properly made by Coroner Ambler from the eligible civil service list on April 19, 1907, for he had not previously exercised his power of appointment except by attempting to do so in conjunction with Coroner Nutt as hereinabove stated. That part of the statute which prescribes that the appointment shall be made "on assuming office" is merely directory, and the exercise of the power could have been compelled in the public interest, if it had been further disregarded. And, upon the theory that by the resignation of Dr. Strong a vacancy existed, the board of coroners had the power, and it was their duty, to fill it for the remainder of the term under section 1769 of the "Consolidation Act," above cited. This they seem to have done by the temporary appointment of Dr. Frey on February 19, 1907, and his permanent appointment on May 27, 1907. It is immaterial that the board of coroners have assumed to make original appointments of coroner's physicians or confirm those made by individual coroners, for no power of appointment is conferred upon them by the statute except to fill a vacancy. Id.

That the written evidence of appointment was not filed in the office of the board of coroners is not a fatal omission. These writings are in existence, and are attached to the papers presented hereon. The proper practice would have been to so file them and immediately certify the fact of the appointments to the municipal civil service commission.

It may also be observed that the matter of the appointment of a coroner's physician is not analogous to that of the clerks and the stenographer, for the latter are appointed by the coroners acting together, or as a board, and their terms are not fixed by law. Amended Charter of 1901, § 1571.

It may be further observed that, if the duration of the position of coroner's physician is coterminus with that of the coroner appointing him, it is unimportant that Dr. Nammack was a veteran volunteer fireman.

If the foregoing opinion be a correct statement of the law applicable to the facts, as I deem it to be, it necessarily follows that only Dr. Flynn and Dr. Frey are lawfully holding the position of coroner's physician in the borough of Queens.

Let an order be prepared that a peremptory writ of mandamus issue accordingly. The application of Dr. William H. Nammack is denied. No costs are allowed to any party.