NAMMACK v. CREELMAN et al.

(Supreme Court, Appellate Division, First Department. June 16, 1911.)

1. JUDGMENT (§ 720*)—CONCLUSIVENESS.
    An unreversed decision in a mandamus proceeding, in which one claiming office as a coroner's physician intervened, that his appointment was invalid and that he did not hold over, is conclusive in a subsequent proceeding to compel payment of salary to him.

    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. § 720.*]

2. MUNICIPAL CORPORATIONS (§ 124*)—CIVIL SERVICE—CORONER'S PHYSICIAN.
    The provision for classification of the position of coroner's physician under the New York City civil service is valid.

    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 124.*]

3. MUNICIPAL CORPORATIONS (§ 133*)—CORONER'S PHYSICIAN—APPOINTMENT —VALIDITY.
    The office of coroner's physician in New York City having been placed under civil service, an appointment of one not on the eligible list by the coroner is invalid.

    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 133.*]

Appeal from Special Term, New York County.

Mandamus proceeding by William H. Nammack against James C. Creelman and others. From an order granting a writ, and from an order resettling such order (66 Misc. Rep. 523, 123 N. Y. Supp. 1063), defendants appeal. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Terence Farley, for appellants.
John J. Curtin, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. This is an appeal by defendants, constituting the municipal civil service commission of the city of New York, from an order directing that a peremptory writ of mandamus issue requiring them to certify the name of relator as coroner's physician upon the regular monthly pay rolls of the borough of Queens, city of New York, for the months from July to December, 1910, inclusive. The precise question at issue is whether or not relator legally held the office of coroner's physician in the borough of Queens for the months for which he seeks to be certified.

The office of coroner's physician is filled by appointment by the coroner. Section 1571, c. 466, Laws 1897 (Greater New York charter) provided that:

"Each of said coroners [being the coroners in the several boroughs] shall possess all the powers and perform all the duties vested in or imposed upon coroners by any existing laws relating to coroners in the city of New York as heretofore known or bounded, or by any law of this state."

The same provision is preserved in section 1571 of the Revised Charter of 1901 (Laws 1901, c. 466). By section 1769 of the consolidation act (Laws 1882, c. 410), it was provided that:

"Each coroner of said city [being the former city of New York] shall on assuming office appoint a qualified physician who shall be a resident in said city and shall be known as a coroner's physician. Any vacancy in the office of coroner's physician shall be filled by the board of coroners. The board of coroners for cause may remove the physician appointed by them."

The result of reading these two sections together, as they must be read, is that since the creation of the present city of New York the law has been that each coroner of any borough shall, on assuming office, appoint a coroner's physician. There has been some difference of judicial opinion whether the term of office of a coroner's physician is coterminous with that of the coroner who appointed him, or whether it is continuous subject to termination only by removal or resignation. The better opinion, as we consider, and certainly that supported by the greater weight of authority, is that the appointment of a coroner's physician is personal to each coroner, and that the term of office of each physician is coterminous with that of the coroner who appointed him, unless he has been sooner removed. People ex rel. Williams v. Zucca, 36 Misc. Rep. 260, 73 N. Y. Supp. 311; People ex rel. Whitman v. Goldenkranz, 38 Misc. Rep. 682, 78 N. Y. Supp. 267; Matter of Flynn, 65 Misc. Rep. 233, 119 N. Y. Supp. 1079; People ex rel. Schulum v. Harburger, 132 App. Div. 260–265, 116 N. Y. Supp. 994. In view of the adjudication to which we shall presently refer, it is not absolutely necessary to decide this question, which is dealt with here only in consequence of the difference of opinion which seems to have prevailed at Special Term.

[1] The relator was first appointed coroner's physician on January 1, 1898, and held that position without interruption until December 31, 1905, having been reappointed once in the meantime. The charter of 1897, supra, provided that there should be three coroners in the borough of Queens. This number was reduced by the Revised Charter of 1901, supra, to two; but there continued to be three cor-

oners' physicians, or persons claiming to hold that position. On January 1, 1906, one Samuel D. Nutt, then newly elected coroner, undertook to appoint two physicians, appointing first one Timothy J. Flynn, and afterwards the relator. There was then another person named Strong claiming to hold as, and acting as, coroner's physician under an appointment made in 1898. He resigned on January 1, 1907, and the board of coroners undertook to fill his place by the appointment of one Walter G. Frey, who subsequently received a personal appointment from Coroner Ambler. There were thus three persons holding appointments as, and claiming to be, coroners' physicians in the borough of Queens, whereas the law provided for only two coroners, and consequently for only two coroners' physicians. This fact having been brought to the attention of the comptroller, he refused to pay any of them. Thereupon Flynn brought a proceeding to compel the payment of the salary claimed to be due to him. In this proceeding the relator and Dr. Frey were permitted to intervene, upon their own application. The matter came on for hearing at Special Term, and it was held that Flynn and Frey were the only legally appointed coroners' physicians for the borough of Queens, and that the relator was not one of the coroners' physicians of said borough. Matter of Flynn, 65 Misc. Rep. 233, 119 N. Y. Supp. 1079. It was thus definitely decided, in a proceeding to which relator was a party, and in which he had been heard, that his attempted appointment by Coroner Nutt, being the one under which he then claimed, was invalid and of no effect, and, further, that he had not held over and continued to be coroner's physician under any prior appointment. That decision stands unreversed, for, though relator appealed, he never persisted in the appeal. It is, as against him, a complete and conclusive adjudication that he had not been since December 31, 1905, a coroner's physician. Whatever rights he has, therefore, to be now recognized as coroner's physician, must have accrued since January 1, 1906.

[2] When he was first appointed in 1898 the position of coroner's physician was not classified under the civil service rules, and appointments thereto were not required to be made from an eligible list. Since then, however, the position has been classified as subject to competitive examination. We find no legal obstacle to such classification. Matter of MacLeod, 71 Misc. Rep. 166, 129 N. Y. Supp. 883. After it had been decided that relator had not been legally reappointed on January 1, 1906, he attempted by mandamus to compel the civil service commission to certify him as eligible to appointment as police surgeon. Pending the determination of that application (which was ultimately denied) Coroner Schaeffer on March 3, 1910, requested the respondents to exempt relator from competitive examination under rule 12, par. 6, of the civil service rules, to permit his appointment as coroner's physician at $125 per month. The rule referred to provides that:

"The commissioners may by resolution exempt from competitive examination any person *engaged in private business* who shall render any professional, scientific, technical, or expert service of an occasional and exceptional character to any city officer, and the amount of whose compensation in one year shall not exceed $750."

The respondents complied with this request and duly certified relator's name as entitled to payment under such resolution, until he had been paid (to and including June, 1910) the full allowable sum of $750. On May 11, 1910, there was filed with respondents a certificate of appointment by Coroner Schaeffer, purporting to have been made on January 1, 1910, and undertaking to appoint relator coroner's physician. It is upon this appointment, if any, that relator's case must rest.

[3] The office of coroner's physician having been placed in the competitive class, and the relator not having held office continuously, he could only be appointed from an eligible list in accordance with law and rules and regulations of the civil service list, unless he came within one of the exceptions. He cannot claim as one of those who may be reinstated, because a reinstatement must be made within a year from the date on which the person to be reinstated was separated from the service. Rule 12. In this case relator ceased to be a coroner's physician December 31, 1905. Nor can he claim the advantages of the three-year rule referred to by the learned justice below, for that only applied to a transfer from one department, office, or institution to another. Rule 14. It is conceded that relator, at the time of his attempted appointment by Coroner Schaeffer, was not upon any eligible list for the position to which it was attempted to appoint him. He apparently, some years before, had been on an eligible list, which had been canceled and superseded by a later list upon which his name did not appear. Considering the attempted appointment by Coroner Schaeffer on January 1, 1910, as an original appointment, subject to then existing laws and unaffected by the relator's previous official history, and thus I think we must consider it, it is plain that the attempted appointment was illegal and invalid, and that relator did not thereby become a coroner's physician.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion for a mandamus denied, with $50 costs. All concur.