Wilfred A. Waltemade, J.
Petitioners, the State Administrator, as secretary to both the Administrative Board of the Judicial Conference of the State of New York and the Judicial Conference, and the Administrative Judge of the Civil Court of the City of New York, bring the present proceeding pursuant to CPLR article 78 for a judgment directing the respondents, the Mayor of the City of New York, the Board of Estimate, the Director of the Budget, the Comptroller, and the City of New York, to take whatever action is necessary to implement additional appropriations for the Housing Part of the Civil Court of the City of New York. Respondents moved initially to dismiss the present action for failure to state a cause of action upon grounds that petitioners are not aggrieved parties and lack standing to sue. This court denied that motion on the argument and directed the service of an answer. Issue is now joined and the substantive issues of this controversy are before the court.
The answer reiterates the defense that the petitioners lack standing to compel appropriation of funds for the Housing Part of the Civil Court. In addition, the respondents contend that the petitioners have not followed those procedures mandated by section 211 (subd. 2, par. [k]) of the Judiciary Law and that any budget modifications in excess of those funds already allocated to the courts are solely within the discretion of the Mayor, the City Council and the Board of Estimate.
On June 8, 1972, the Legislature amended the New York City Civil Court Act, the Administrative Code and the Multiple Dwelling Law in relation to the creation of the aforesaid Housing Part (loosely dubbed the Housing Court by some) for the trial of violations of State and local Housing Acts (L. 1972, ch. 982; CCA, § 110). This act was designed to shift the responsibility for the enforcement of housing violations in New York City from the Criminal Court to this specially created *510 Part of the Civil Court. Hopefully, the transfer of enforcement to the Civil Court will alleviate the burden upon the crowded Criminal Court and afford the public a more expeditious and effective method of building code enforcement. Governor [Rockefeller, recognizing the need and urgency of the legislation, called for the implementation of the new system by April 1, 1973, and urged that the advance preparations begin promptly after passage of the enabling act (N. Y. Legis. Annual, 1972, Governor’s Memoranda, p. 373). It is evident, however, that heed was not given to the Governor’s plea for haste in this matter.
Communications between the executive and judicial branches of the city government have deteriorated to such an extent that this lawsuit has become necessary to determine how and when the Housing Part is to be funded.
Procedurally, there is no doubt that the petitioners have standing to bring the instant proceeding and they are aggrieved parties. In accord with the doctrine of the separation of powers, the judiciary is and shall remain a separate, independent and coequal branch of government with the executive and legislative. The judiciary has the right and power to protect itself from the impairment of its functions and it has the co-ordinate authority to make full use of its jurisdiction. (Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, cert. den. 402 U. S. 974; see, also, 20 Am. Jur. 2d, Courts, § 79). Pursuant to legislative fiat, the Civil Court has been granted an extension of jurisdiction. Consequently, the State Judicial Conference, together with the Civil Court, has the legal and constitutional right and obligation to insist that the new jurisdiction be given effect.
Clearly, the question presented to this court is whether the executive branch of government, by the exercise or nonexercise of .its appropriating powers can impede or frustrate the courts from realizing their lawful jurisdiction and, simultaneously, flout a legislative mandate enacted June 8, 1972.
Section 29 of article VI of the Constitution of the State of New York permits the annual financial needs of the courts to be determined by the appropriate governing bodies. This power is relegated to that of review of the budget estimates submitted to it, but the capacity to review does not carry with it the power to share the responsibility of court administration (Matter of Serra v. Procaccino, 33 A D 2d 210, revd. on other grounds 27 N Y 2d 162). Nor is the executive branch given concomitant inherent ability to destroy by the withholding of an appropria *511 tion (cf. Matter of Colbert v. Delaney, 249 App. Div. 209, 216; Matter of McKinney v. McGoldrick, 243 App. Div. 210, 213, affd. 266 N. Y. 632, rearg. den. 266 N. Y. 665).
In opposing the arguments advanced hy the petitioners, the Corporation Counsel, on behalf of the respondents, seeks to restrict the city’s responsibility to a final determination of the budgetary sums to be allotted to the courts, while ignoring the corresponding duty of the city to appropriate adequate sums for the continued operation of the court system. There is no question that by the 1962 amendment to the New York State Constitution, the courts lost their mandatory budgetary powers and are now required to submit to a review of their monetary needs by the city prior to appropriation. By the same amendment, the city was not relieved of its obligation to furnish the necessary funds as required by the courts for their functioning in the proper discharge of the constitutional requirement to operate an efficient system of justice.
The city’s position that it is now vested with ££ discretion to appropriate or not to appropriate ’ ’ funds is a brash attempt to extend the respondents’ authority which has no foundation in logic or in law. The arrest of the court’s earlier power to mandate all of its costs of operation never sanctioned or reposed complete authority in the respondents to cut off all funds for the courts within the City of New York. Such a grasp of power is both illegal and unconstitutional (N. Y. Const., art. "VT, § 29, subd. d; Judiciary Law, § 213, subd. 7; Matter of Henderson v. La Guardia, 182 Misc. 1071, affd. 268 App. Div. 892, affd. 294 N. Y. 728).
The duty to fund cannot be avoided or subverted because budgetary modifications or future appropriations entail some degree of discretion. Discretion may not be abused or converted into a subterfuge to exercise a de facto veto over legislative enactment. (Matter of Colbert v. Delaney, 249 App. Div. 209, supra.) The anomaly, however, in this situation is that the respondents plainly stated on the argument in this court that they not only recognize the need for the so-called ££ Housing Court ” but wholeheartedly approved its establishment. Respondents certainly have discretion concerning the extent of the budgetary allotment, but again they may not radically exercise the fiscal estimates to a degree that would debilitate the courts, or a part thereof, and render them anemic or impotent. The limits of respondents’ discretion are constitutionally proscribed (Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, cert. den. 402 U. S. 974, supra). Furthermore, it is of no critical *512 interest to the respondents that the Civil Court chooses, within limits of the enactment, to designate hearing officers, their numbers, function, salary, or the deployment thereof. Those considerations are resident in the courts by statute and as a matter of inherent right (Judiciary Law, § 212; Matter of Serra v. Procaccino, 33 A D 2d 210, revd. on other grounds 27 N Y 2d 162, supra). Nor is it a substantial obstruction to relief that normal budgetary procedures were not complied with in this instance (Judiciary Law, § 213, subd. 7). Despite the existence of established budgetary procedures, budget appropriations for the courts for all practical purposes are lump sum allocations (see City Record, Supplement, Yol. XC III, No. 27927, June 23, 1965, p. 60). '
If the petitioners did not follow the ordinary procedures to obtain a modification of the city’s 1972-1973 budget to procure the funds for the period from April 1, 1973 through June 30, 1973, the respondents nevertheless do not deny that they were on written notice beginning in November, 1972, that city funds were needed for the new Housing Part of the Civil Court. It must be remembered that the Civil Court apparently did not know the estimated cost of the operation of the new Part until it had received in November, 1972, an advance copy of the cost projection prepared by the Advisory Council for the Housing Part. It was this itemized estimate of personnel and fund requirements which was forwarded to the Bureau of Budget by the Civil Court in November, 1972. The same operating estimate for a full year ($745,200) was attached to the “ First Report of the Advisory Council for the Housing Part ”, dated January 29, 1973, and distributed to Mayor Lindsay, among others.
Considering that this legislation was adopted on June 8,1972, it would appear that the petitioners have acted with celerity. The defense that budget estimates were not properly submitted is therefore dismissed as without merit under the prevailing .conditions since to sustain such a proposition would thwart constitutional and legislative intent and purpose and would indicate a preference of form over substance (Henderson v. La Guardia, 182 Misc. 1071, 1072-1073, affd. 268 App. Div. 892, affd. 294 N. Y. 728, supra). In reality, no cogent reason has been advanced which would in any manner compel this court to conclude that it is either illegal, impossible or impractical to appropriate funds at this date .by á modification of the city’s budget for the fiscal year 1972-1973.
*513 Accordingly, petitioners’ request for relief, consonant with a recognition of orderly budgetary procedures is granted to the following extent: Respondents, having been made aware of the annual needs for the operation of the new Housing Part of the Civil Court, can in a simple investigation by the appropriate fiscal authorities of the City of New York, determine, based upon the foregoing estimate, what additional allocation should be made available to the Civil Court for that period of the present fiscal year from April 1, 1973 and ending June 30, 1973.
The budgetary allowance for the entire operation of the Civil Court, including the Housing Part, can and should be made under regular procedures for the on-coming fiscal year commencing July 1,1973 and terminating June 30,1974. Petitioners have advanced no reasons to this court why such a course of conduct cannot be followed because the 1973-1974 budget has not yet been adopted. Respondents, therefore, in accordance with the foregoing, are to fund the Civil Court so that it might be able to undertake the new and additional jurisdiction conferred upon it by chapter 982 of the Laws of 1972 by April 1, 1973.
The right of the public to a swift adjudication of housing complaints is to prevail over obstinacy.
The respondents and each of them are ordered and directed to proceed forthwith to take the necessary action to make available the funds which are required to properly staff and operate the Housing Part of the Civil Court of the City of New York now scheduled to open on April 1, 1973.