Joseph A. Brttst, J.
Petitioner has instituted this CPLR article 78 proceeding for an order directing respondents to provide him with a “manual stenographic record ’’ for the hearing of a proceeding now pending in the Housing Part of *695 the Civil Court of the City of New York, Bronx County, rather than a “mechanically recorded record.”
Petitioner herein is the respondent in a summary proceeding for the nonpayment of rent instituted against him by his landlord Moses Harbater. On September 27, 1973, pursuant to CCA (§ 110, subd. [k]), petitioner served upon the Clerk of the afore-mentioned Housing Part, a written notice requesting that all proceedings held in court be recorded manually. On October 1, 1973, this matter came on before Civil Court Judge Viitoeitt Tbimabco, who denied petitioner’s request and directed that the proceedings be recorded “ mechanically.”
The New Housing Court Act (CCA, § 110, subd. [k]) provides that “ Unless a party requests a manual stenographic record by filing a notice with the Clerk two working days prior to the date set for an appearance before the court, hearings shall be recorded mechanically. ”
Bespondents challenge the power of this court to grant the relief sought by petitioners, contending that the denial of the manual stenographic record was not a ministerial act, but a “determination made in a ‘civil action’, and that therefore petitioners’ sole remedy is by way of appeal.” They rely upon a large body of well-established law that an article 78 proceeding may not be used to challenge a determination of a Trial Judge.
However, the instant case is distinguishable by the fact that respondent Trim arco did not rule against petitioner in his “ judicial capacity ”, but in his capacity as Assistant Administrative Judge. The submitted papers herein establish that it was the respondent Administrative Judge who mandated the policy that there be no manual stenographic records taken in any trial in the Housing Part, regardless of any demand made under the afore-mentioned CCA (§ 110, subd. [k]). The respondent Assistant Administrative Judge was, in effect, merely carrying out this policy. What is being challenged here is not the ruling of a Trial Judge, but actually an administrative determination by the respondents, which in contravention of a clear mandate of law, denies petitioner, and all other litigants similarly situated, their statutory right to a manual stenographic record.
Furthermore, the making and keeping of court records is merely a ministerial duty (cf. 49 N. Y. Jur., Records and Recording Acts, § 12) and an article 78 proceeding is the appropriate remedy to compel respondents to desist from taking a particular administrative action in contravention of a clear *696 mandate of law, and to discharge appropriate ministerial duties (Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 684).
Respondents further oppose this application on the ground that the providing of a manual stenographic record is not a matter of ¡right but is a matter of discretion with the court, and that even if it is not discretionary, the denial of a manual stenographic record is so lacking in substantial prejudice that it should be weighed against the hardship of additional costs of court reporters to the taxpayers. There is no substance to either of these defenses. With reference to the question of discretion — there is no discretion. The clear and unmistakable language of CCA (§ 110, subd. [k]) gives a party to a proceeding in a Housing Part the absolute right to a manual stenographic record upon the timely filing of a demand therefor. To rule otherwise would be to misconstrue the language of the statute and to give it a meaning that would defeat the very purpose and intent of this provision.
With respect to the alleged hardship that might be caused by additional costs, ,and with respondent’s lack of sufficient funds necessary to provide manual stenographic records, this court considers this argument specious. This court is fully aware and appreciative of the achievements of both Justice Thompson and Judge Trimaroo in their successful administration of the operation of the Civil Cpurt despite lack of funds, facilities and personnel. Nevertheless Justice Thompson was quite successful in his recent action brought pursuant to article 78 to compel the City of New York to provide adequate funding for the new Housing Court (see Matter of McCoy v. Mayor of N. Y., 73 Misc 2d 508, affd. 41 A D 2d 929).
It necessarily follows that the cost of manual recording as mandated by the statute herein must be borne by the City of New York regardless of additional cost.
It is interesting to note that the respondent administrator was a member of a joint committee appointed in 1970 by the Appellate Division -of the First and Second Departments respectively to evaluate the use of electronic recording devices. The conclusion 'of this committee’s report, submitted herein, which was subscribed by said respondent, stated: “ On the basis of the evaluations, the statistical studies and the observations of the four subcommittee, it is a conclusion of the committee that: ‘ The transcripts of court reporters are far superior to those of recording machines.’ The much larger number of errors committed by the recording machines including statements left *697 out .and wrong speaker identification * * * clearly indicates that the recording machines are not viable substitutes for court reporters. ” (Emphasis supplied.)
The mechanical tape recording machine purchased for use in the Housing Court is similar to .a type that was tested and evaluated by a subcommittee of the afore-mentioned joint committee. It was demonstrated in actual use in a Landlord and Tenant Part of the Civil Court. The machine embraces four microphones strategically placed in the courtroom, and each voice is recorded on a separate track. As a result of this test, and other tests and observations made by the committee, the majority of the members of the committee concurred in the following findings:
“ 1. Transcripts produced by the court reporters were far more accurate than transcripts produced from the recording machines.
‘ ‘ 2. Complete statements by trial participants, some of substantial length, were often missing in the transcripts produced from the recording machines, once because of an electrical failure.
‘ ‘ 3. Speakers were often wrongly identified in the transcripts produced from the recording machines. Monitoring and logging procedures of the machine companies proved inadequate for use in differentiating speakers, although in many instances they were performed by officials of the companies involved.
“ 4. The recordings on the tapes and discs were of poor quality and had to be replayed repeatedly in order to understand what was said. In many instances the sounds could not be distinguished, and in some instances the sound quality was so poor that the particular evaluation could not proceed.
“ 5. Because of poor court room acoustics and the sensitivity of the microphones, extraneous noises were picked up and at times tended .to extinguish what was being said.
“ 6. Non-verbal actions of participants (such as a shake of the head, pointing, etc.) were lost in the machine transcripts because their transcribers were not present in the courtroom to observe.
“7. It took much longer for transcription from the tapes and discs than from the reporters’ notes.
“ 8. Dictaphone ceased participation in the daily copy test after the first day, and never participated in the immediate copy delivery. McGraw-Edison was unable to produce more than half the transcript by the 7 p.m. deadline for the immediate copy delivery.
*698 “ 9. Dictaphone failed to provide a time breakdown and list of transcribers and others working on their transcripts, in violation of the ground rules.
“ 10. The machine monitors on occasion- had difficulty playing back prior testimony in the courtroom. At one point in the Supreme Court test, when the .tape playback could not be understood, the Dictaphone monitor suggested that the Court ask the reporter to read the prior testimony, which was done.
“ 11. At times off-the-record discussions were recorded and transcribed by the machine companies. Although not mentioned in the subcommittee reports, the problem of not violating the lawyer-client relationship by the sensitivity of the microphones was ever present.”
Parenthetically, it is noted that in all the tests conducted by the investigating committee, a trained person was present to operate .the recording machine. Respondents do not propose to have a trained person present in each courtroom to monitor the operation of the .recording machines. This function would necessarily rest with the Hearing Officer or Presiding Judge who obviously is untrained and would have no means of knowing whether the machine was operating efficiently until a transcript was ordered, at which time it would be too late to remedy any faults or defects in the recording. It would also distract the Judge and prevent him from giving his undivided attention to the witnesses as they testify.
This application is granted and respondents are directed to provide petitioner with a manual stenographic record, as demanded.