Aloysius J. Helia, J.
PRELIMINARY STATEMENT
Pursuant to the CPLR, separate article 78 proceedings were brought by petitioners, the Justices of the Supreme Court of the State of New York, First Judicial District, and their personal attendants, against the respondents, the State Administrative Judge, the Administrative Board of the Judicial Conference, the Mayor of the City of New York, and other city officials and bodies.
The petitioners seek to annul the determination of the respondent State Administrative Judge and permanently to restrain the respondents from eliminating the positions of personal attendants to these Supreme Court Justices and to require the city to continue to pay the salaries of these nonjudicial employees.
On the application of petitioners, and there being no objection by respondents, these proceedings are consolidated for purpose of disposition.
A temporary restraining order was heretofore issued pending a hearing and final determination in the proceeding. A Justice of the Appellate Division, First Department, continued the stay.
*416 petitioners’ claims
The petitioners claim that (1) section 222 of the Judiciary Law authorizes only Supreme Court Justices in the First Judicial District to appoint and remove personal attendants; (2) in any event since appropriations in accordance with a preexisting union contract were heretofore made in keeping with the regular city budgetary statutory scheme, the necessary budget modification was not made pursuant to statutory requirements of notice, hearing, etc.; and finally (3) while the constitutional doctrine of separation of powers requires the city to provide sufficient funds for the judiciary to function properly, the Judicial Conference abandoned its mandated duties in failing to see that the financial needs of the courts were met when it acceded to this and other court budget cuts.
BACKGROUND OF CONTROVERSY
The respondent State Administrative Judge, pursuant to statute (Judiciary Law, § 212) and orders of the four Appellate Divisions and the approval of the Administrative Board of the State Judicial Conference, administers the courts of the State.
In May, 1975, due to . the fiscal crisis confronting the city, the respondent Mayor requested that the State Administrative Judge present an "austerity budget” for the courts within the City of New York for the fiscal year 1975-76. It was further requested that an alternative "crisis budget” be in readiness in the event that receipt of all of the contemplated revenues failed to materialize.
As a consequence, the Administrative Judge further pruned the pre-existing skeleton court facilities and personnel, to reflect savings of 5.8 million dollars. Included in the elimination of personnel from the court" staff were the personal attendants of Supreme Court Justices, First Judicial District.
The Administrative Board of the Judicial Conference, by resolution adopted September 26, 1975, directed that the Personal Attendant positions referred to herein be eliminated.
Due to subsequent developments and a worsening situation, the Mayor advised the Administrative Judge that additional cuts in the court budget of 7.35 million dollars were required. The total budget cut in the court system then would amount to 13.15 million dollars out of a proposed budget of 98 million dollars.
The cuts in services and personnel included the closing of *417 some courts, the nonretention and appointment of certain Judges, and the elimination of a total of 802 persons from the court staff. These sacrifices were made, though the court budget for the City of New York represents less than 1% of the entire city budget.
By letter dated November 5, 1975, the petitioner personal attendants were notified by the office of Court Administration that their services were terminated effective December 5, 1975.
Appropriate budget modifications affecting the Supreme Court First Department unit of appropriation have not been accomplished to date. It is claimed that this is due to the entry of a temporary stay of all budgetary activity in the instant proceedings.
POINT i
Petitioner Justices claim position of Personal Attendant mandated by statute (Judiciary Law, section 222)
Section 222 of the Judiciary Law provides as follows: "Whenever, under the provision of any law heretofore adopted, a judge or justice of the unified court system is authorized to appoint personal assistants to render to him legal or clerical services, the power of such judge or justice to make such appointments shall continue, notwithstanding the provisions of section two hundred fourteen of this chapter, in accordance with the standards and administrative policies adopted by the administrative board pursuant to the provisions of section two hundred twelve of this chapter and subject to the final determination of budgets by appropriating bodies as provided in section twenty-nine of article six of the constitution. Should a judge or justice die, or cease to hold office, the personal assistants thus appointed by him shall continue in office until an appointment shall be made under this section by the judge or justice elected, or appointed to fill such vacancy. The judge or justices of the court, or a majority of them shall, until the appointment or election of such succeeding judge or justice, regulate, determine and fix the duties of any such personal assistant thus continued in office.”
The petitioner Justices contend that the respondents have no authority to deprive them of their statutory right to make the appointments of personal attendants. In support thereof they point to the language of the statute which states in part: *418 "Wherever, under the provision of any law heretofore adopted, a * * * justice of the unified court system is authorized to appoint personal assistants to render to him legal or clerical services, the power of such * * * justice to make such appointments shall continue”.
They further claim that the "law heretofore adopted,” granting the power to make such appointments, is contained in section 166 of the Judiciary Law. It reads as follows: "Each of the justices of the supreme court in the first judicial district shall appoint and at pleasure remove four attendants upon the court. Each of said attendants may also be removed by the appellate division, but not until he has been informed of the cause of the proposed removal and has been allowed an opportunity to make an explanation.”
Additionally the petitioners claim that history and statutory authority, antedating the new article 7-A of the Judiciary Law, and the committee reports in connection therewith, ■ support their view.
Section 166 of the Judiciary Law, the modern-day progenitor on the historical tree, which gives the power of appointment to the individual Justice, was originally enacted in 1909, replacing a similar provision enacted in 1895. Through these many decades, Justices of the Supreme Court, First District, have made such appointments pursuant to this statutory authority.
The respondents concede that the power of appointment lies only in the individual Justices. However, they argue that the power of appointment is circumscribed by two provisions in section 222 of the Judiciary Law.
The claim is made that the first restriction on the power of appointment is contained in the proviso that such designations be made "in accordance with the standards and administrative policies adopted by the administrative board pursuant to the provisions of section two hundred twelve of this chapter” (italics supplied).
During the course of oral argument, the respondents conceded that this provision is not relevant to the instant proceeding because no "standards and administrative policies” have been made affecting these positions.
In any event I would assume that "standards” have to do with levels of education, capacity to perform certain duties, etc. "Policies” may well have to do with outside activities, *419 such as employment, political activity, and other matters. None of these considerations is involved herein. .
Since the respondents have abandoned this attack, I will not pursue it.
The respondents point to another restriction on the appointing power contained in section 222. It provides that the power of appointment is "subject to the final determination of budgets by appropriating bodies as provided in section twenty-nine of article six of the constitution.” {Italics supplied.)
Section 29 of article VI of the Constitution provides in relevant part: "Insofar as the expense of the courts is not paid by the state in the first instance and is borne by * * * the city of New York * * * the final determination of the itemized estimates of the annual financial needs of the courts shall be made by the appropriate governing bodies of such counties, the city of New York or other political subdivisions.”
Pursuant to this constitutional provision, who finally determines how much money shall be appropriated for the courts in the city, annually, and to what uses the appropriated money shall be put?
We operate under a tripartite form of government, embracing coequal branches of executive, legislative, and judicial responsibility. Each branch is separate, independent, and coequal, possessing inherent powers to protect itself from impairment of function (Commonwealth ex rel. Carroll v Tate, 442 Pa 45, cert den 402 US 974).
It is a fundamental principle of constitutional law that one branch of government may not encroach on the jurisdiction of another, nor impede another in carrying out its duties and responsibilities. Included in this concept is the obvious caveat that the "appropriating body” must appropriate sufficient funds for all three branches of government to carry out its functions.
In 1962, when the Constitution was amended, the courts lost mandatory budget powers and thereafter were required to .submit their monetary needs to review by the city prior to appropriation. However, the city was not thereby relieved of its obligation to furnish the funds required by the courts. The city has no power to cut off all funds for the judiciary, nor may its discretion be abused. Limits of discretion are constitutionally and statutorily prescribed (Matter of McCoy v Mayor of City of N. Y., 73 Misc 2d 508).
*420 Included in an analysis of this problem is the concept that no branch of government possesses any power not given to it either in the Constitution or by statutory authority.
In the City of New York, the "appropriate governing bodies,” for budget purposes at least, are the Mayor, the City Council, and the Board of Estimate.
Prior to the amendment of the State Constitution in 1962, the individual court systems in the City of New York fixed the salaries of its own personnel; these fixations then became a mandated charge upon the city. When the Constitution was changed, the power in the courts to fix charges unilaterally on the governing bodies was removed.
The respondent city argues herein that the plain language of section 29 of article VI of the Constitution gives this power solely to the city.
The respondent State Administrative Judge claims otherwise. It is argued that the amount of funds to be appropriated for the courts is to be determined in an amorphous arrangement wherein the appropriating bodies and the judiciary reason and argue to a mutually satisfactory conclusion.
In this regard the State Administrative Board points to the constitutional and statutory scheme for the appropriation of moneys to operate the unified court system. Under the provisions of section 29 of article VI of the Constitution and the Judiciary Law (§ 211, subd 2, par [k]; § 216, subd 3; § 213, subd 7), itemized estimates of the financial needs of the court are prepared by the State Administrative Judge under the supervision of the Appellate Divisions. The budgetary plan arrived at is submitted to the State Administrative Board for approval. The final product is then forwarded to the appropriating bodies for "final determination.”
The board and the city, in making a "final determination,” are required to include therein mandated expenses, such as are involved herein. The power to appoint carries with it the obligation on "appropriating bodies” to provide reasonable funds therefor.
What is meant by "final determination of budgets”?
The City Council (appropriating authority), in its budgetary process, approves "units of appropriation” for the respective courts in the city. It does not include in the budget, per se, line items of positions and salaries. It is a lump-sum appropriation. The Administrative Judge submits to the city Budget *421 Director an estimate of fiscal requirements, which basically include line items. They only serve to demonstrate how unit totals are calculated and are not voted upon.
So the final determination is only as to amounts and not as to specific line items.
The delegation of fiscal power by the Legislature to appropriating bodies, insofar as the unified court system is concerned, can only be a joint or co-ordinate power. Any other concept would violate the separation of powers doctrine.
This necessary conclusion further serves to illuminate the intent behind "final determination of budgets.”
The "final determination” role of the city provided for in section 29 of article VI of the Constitution is intended merely as a brake on the judiciary so that it may not make undue demands on the treasury. The city merely serves as the fiscal-raising authority for the courts; in neither its executive nor legislative capacity may it play a supervisory role in the operation of the courts. It may not assign personnel; it may not fix their responsibilities nor determine their numbers.
It is also true that the fiscal role of the city contains no power to determine how appropriated moneys may be used (Matter of Morris v Beame, 39 AD2d 803, affd 31 NY2d 812; Matter of Serra v Procaccino, 33 AD2d 210, 214, revd on other grounds 27 NY2d 162).
In Matter of Serra v Procaccino (supra, p 214) the court held that the power of final determination of the budget by the local fiscal authority "includes no 'strings’ by which the local authority can control an appropriation once made.”
The supreme constitutional power of the Administrative Board to administer the courts is provided for in section 28 of article VI of the Constitution.
Also in Matter of McCoy v Mayor of City of N. Y. (73 Misc 2d, at p 512) the court, citing section 212 of the Judiciary Law which sets forth the powers of the Administrative Board, found that the power of designating court employees, their numbers, functions, salary, and deployment does not reside in the fiscal authority but resides in the courts "by statute and as a matter of inherent right.”
Inherent in this interpretation of the Constitution and the statutes is the requirement for ,an amicable accommodation of judicial needs by appropriating bodies.
The position of the State Administrative Judge in this *422 regard would appear to be legally sound. To hold with the city would fly in the face of the doctrine of separation of powers. It would permit the executive and/or legislative branch of government to emasculate or starve the judiciary out of existence by budget manipulations.
Reason, logic, and an understanding of section 29 of article VI and the implementation thereof in the Judiciary Law lead to the conclusion that the city may not, acting on its own, finally determine the court’s budget requirements. An accommodation, reasonably arrived at, is required.
The meaning, then, of section 29 of article VI of the Constitution is that the city, acting in consultation with the State Administrative Board, "finally determines” the budgetary appropriation for the courts. The Administrative Board determines to what uses the appropriated money shall be put.
For a resolution of the problems here presented, the constitutional scheme must be further analyzed in conjunction with the statutory implementation and' the judicial construction thereof.
The State Administrative Judge argues that while the city may not act unilaterally in this area, the Administrative Board made a determination to eliminate the positions of Personal Attendants in order to aid the city in its financial difficulties. It is argued that the board may finally determine what the fiscal and personnel needs of the court are. The claim is that this authority comes from the broad grant of power flowing from the Constitution and the Judiciary Law.
It is clear that whatever power the board possesses must be found in the Constitution, statutes, and the judicial construction thereof. It is also clear that the board is bound by a statute circumscribing its power. It is axiomatic, too, that a general grant of power must give way to a specific power.
The Administrative Judge and board concede that section 222 of the Judiciary Law vests the specific power of appointment of personal attendants in the individual Justices (Matter of Gilligan v Procaccino, 27 NY2d 162; Matter of Mangano v City of New York, 34 NY2d 135, 138). But that power, they claim, is subject to the limitation therein of the "final determination” of budgets. In making that determination, they decided to eliminate the positions. This right they claim to possess from their broad grant of power contained in sections 1 and 28 of article VI of the Constitution and section 212 of the Judiciary Law.
*423 These are general administrative and supervisory powers. They are subject to specific limitations thereon as may be contained in other statutes of specific application.
The power of appointment ordinarily and logically carries with it the power of removal. The respondents claim no power of appointment, but do claim power of removal by budget eliminations.
This amounts to rewriting the statute. The respondents read into the statute the intended power to eliminate these positions because of lack of funds. Cán it be truly said that, when the statute was drafted in 1962, possible city bankruptcy was contemplated by the legal craftsmen?
It also follows that if the board could abolish these positions in bad times, for lack of funds, that they could do the same in good times, to put the money to another use.
Clearly this was not intended.
In Gilligan (supra; 1970 case), it was recognized that the power of appointment was in the individual Justice. At issue was the power of the Appellate Division to withhold a raise. The Court of Appeals held that the Appellate Division had no such power. If they could not withhold a raise, much less may they abolish the job.
The respondents argue that section 222 of the Judiciary Law deals only with administrative ^authority. If this be true, then it also specifically exempts from the exercise of that authority the power of appointment in question here. Indeed, it subordinates the power of appointment of the Appellate Division contained in section 214 to the specific power referred to in 222.
Under the provisions of section 222, the position of Personal Attendant specifically continues after the demise of an individual Justice. Even at that time, neither the city nor the board may interfere with the position. This proviso serves to demonstrate a lot about the whole intent of section 222.
Section 166 of the Judiciary Law states: "Each of the justices of the supreme court in the first judicial district shall appoint and at pleasure remove four attendants upon the court”. It was pursuant to this clear, specific grant of power of appointment that Supreme Court Justices in the First Judicial District heretofore designated a personal attendant.
Section 166 contains only one caveat: such an appointee *424 may be removed by the appropriate Appellate Division and then only for cause after a hearing.
Indeed, prior to the amendment of the Constitution in 1962, the Appellate Division could not even fix the salaries of such personnel.
This power of appointment is reinforced in section 222. "Whenever, under the provisions of any law heretofore adopted, a * * * justice * * * is authorized to appoint personal assistants to render him legal or clerical services, the power of such * * * justice to make such appointments shall continue, notwithstanding the provisions of section two hundred fourteen of this chapter” (emphasis added). Section 214 refers to the powers of the Appellate Divisions.
I submit that pursuant to this section (222), section 166, which authorizes these appointments, was a "law heretofore adopted.” Its recent genesis antedates this century.
But the respondents also argue (contrary to earlier concession) that the power of appointment contained in section 166 does not refer to the appointment of an attendant upon a judge but to "attendants upon the court. ”
I do not subscribe to the respondents’ interpretation of this provision.
For many decades, Judges in the First Judicial District have rotated not only from courtroom to courtroom but from courthouse to courthouse. Reason and the application of a modicum of common sense would dictate that his personal attendant would not be left behind to aid another Judge. In addition, papers in pending matters would have to be brought along and a host of other matters attended to. Good business practice requires no less than the authority to make the appointee an attendant upon the Judge.
In addition, even the respondents’ brief establishes that the legislative history supports the appointment of personal attendants to individual Justices. "While the legislature recognized that section 166 allowed a justice to appoint one of his attendants as his confidential attendant, see Judiciary Law, sec. 107, there is no mandate in the Judiciary Law that the position of confidential attendant must exist.”
Section 107 of the Judiciary Law provides: "The justices of the appellate division of the supreme court in the first department shall make such rules as they may deem necessary * * * and prescribe the duties of criers, interpreters, stenographers, *425 librarians, clerks, assistants and attendants * * * except the conñdential attendants of the justices of the supreme court whose * * * duties [shall be] prescribed by the justice who appointed such conñdential attendant. ” (Emphasis added.)
But, in addition to section 107, section 157 gives specific power of appointment to such position to the individual Justice.
The practice of the court over many decades also sheds light on the meaning of "attendants upon the court.” The practice has been to have one such person act as a personal attendant to the Judge, both in chambers and the court, performing a myriad number of duties.
I submit that the interrelationship between sections 166 and 222 and the legislative history clearly authorize and mandate the appointment of personal attendants to Supreme Court Justices in the First Judicial District.
The restriction, subject to final determination of budgets, only took away the power of fixing salaries. Indeed, such an appointee may be removed "at pleasure” only of the individual Justice. And at no one else’s pleasure. This, too, is a specific grant of power in section 166.
Pursuant to the specific terms of that statute, the Appellate Division may only remove for cause. "Cause,” in this sense, clearly and historically refers to some dereliction of duty and has no reference to availability of funds.
Since the Administrative Judge derives powers in part from the Appellate Divisions, he has no greater power in this area than they have or could have delegated. Since the Appellate Divisions do not have the power of removal or elimination for financial reasons, the Administrative Judge does not have it.
Section 166 specifically limits the power of the Appellate Divisions to removal for cause. It would seem that if money availability was to be a cause for removal, that could have been specifically set forth in section 222.
Respondents also argue that the power of appointment set forth in section 222 does not include section 166 in its reference to "any law heretofore adopted.” It is claimed that section 166 refers to "attendants upon the court” while section 222 relates to specific statutes affecting legal secretaries, court reporters, etc.
However, in section 222 "a * * * justice * * * is authorized *426 to appoint personal assistants to render him legal or clerical services” (emphasis added).
I submit that personal attendants clearly come under clerical services.
In any event, the respondents further fail to follow history and statutory enactments to the end of the legislative trail.
The 1895 version of section 166 provided for the appointment of four attendants upon the court and one clerk to the Justice. This was followed by a determination of the State civil service board that three of the four attendants upon the court would thereafter be placed in the competitive civil service classification, while the fourth would be in an exempt status to serve as a confidential attendant to the Justice.
Matter of Nammack (66 Misc 523, 525, revd on other grounds 145 App Div 289) says in part: "The State Civil Service Board placed three of these positions in the competitive class, allowing one as an exempt position.”
The 1909 statute, amending section 166, then provided only for four attendants upon the court. However, this, in substance, ratified the ruling of the civil service board that one of those would attend upon the Justice and be exempt.
If any doubt still lingers as to this intent, the ghost was laid to rest in the provisions of section 157 of the Judiciary Law. It provides in part: "Each of the justices of the supreme court in the first judicial district * * * shall appoint and at pleasure remove a clerk to such justice.”
It should also be noted that this, too, was a "law heretofore adopted,” as referred to in section 222.
Sections 168 and 169, as well as an amendment to section 222 in 1969, recognize the existence and rights of confidential attendants. Indeed, the 1969 amendment to section 222 provides that such an attendant remains in office even on the death or retirement of the appointing Justice; his future is left to the determination of the succeeding Justice in office.
The limitations set forth in section 222 only express the legislative will for the implementation of uniform employment standards and policy considerations. Budgetary limitations brake raids on the treasury with respect to salary ceilings and other benefits. These are limited limitations and confer no power of termination in respondents.
The positions are mandated by statute. Expediency is no *427 substitute for statutory authority. That which is created by legislative authority can only be removed by legislative act.
For all the foregoing reasons, I find that the petitioners have sustained the first cause of action and that none of the respondents possesses the authority to eliminate the positions of personal or confidential attendants.
POINT II
Was the budget properly modified to eliminate the positions of Personal Attendants?
If it were assumed that the Administrative Board did have a right to eliminate the position of Confidential Attendant, the question then presented is whether a public hearing was necessary under subdivision c of section 124 of the Charter before the attendants could be lawfully removed.
In its final form the budget contains units of appropriation for the Supreme Court, First Judicial Department. Supporting schedules, included in the budget message of the Mayor, provide for the positions of Confidential Attendants and set forth funds necessary to pay their salary for the fiscal year 1975-1976. On September 26, 1975, the Administrative Board of the Judicial Conference directed that the position of Confidential Attendant be eliminated in the First Judicial District. Thereafter, on or about October 13, 1975, the Office of Court Administration submitted to the City of New York proposed budget cuts that eliminated the position of Confidential Attendant. On November 5,1975, the Office of Court Administration, under the direction of the State Administrative Judge and Administrative Board, notified the confidential attendants that their position would be eliminated at the close of business on December 5, 1975. Pending the determination of these proceedings, the respondents have been restrained from taking any action to modify the expense budget or to remove the confidential attendants from their positions.
The petitioners contend that in order to eliminate the appropriation for Confidential Attendants, a budget modification was required under subdivision c of section 124 of the New York City Charter having to do with the necessity for public hearings and notice thereof. On the other hand, the Administrative Judge of the Judicial Conference, the City of New York, and the other respondents assert that the elimina *428 tion was proper under subdivision a of section 124 of the Charter.
The present budget, as adopted, did contain units of appropriation for the Supreme Court, First Judicial District (New York City Charter, § 117, subd a, par 1). The supporting schedules, itemizing the position of Confidential Attendant, were contained in the budget message but not in the budget itself (New York City Charter, § 117, subd b, par 2). Hence the budget allocation for the Supreme Court was, for all practical purposes, a lump-sum allocation (Matter of McCoy v Mayor of City of N. Y., 73 Misc 2d 508, mod 41 AD2d 929). Thus the Administrative Board of the Judicial Conference, pursuant to its administrative and fiscal powers over the courts in this State (Judiciary Law, § 212), had the power to change or even eliminate units of appropriation without holding a public hearing (New York City Charter, § 124, subd a; Matter of District Council 37, Amer. Federation of State, County and Municipal Employees, AFL-CIO [Lindsay], NYLJ, May 24, 1971, p 2, col 4). The municipal respondents, in turn, are obligated to process the Judicial Conference’s directive eliminating the position of Confidential Attendant.
The petitioners’ reliance upon subdivision c of section 124 of the Charter is misplaced because the Judicial Conference did not (1) "transfer part or all of any unit of appropriation from one agency to another,” or (2) "establish a new unit of appropriation within funds lawfully available therefor,” or (3) "transfer all or part of any unit of appropriation,” or (4) "change the terms and conditions of the budget”. (Matter of Allen v Lindsay, 66 Misc2d 705, 707, 708.)
The implementation of the final budgetary mechanics having to do with failure to publish the elimination in the City Record, etc., has been stayed by the entry of the order herein. Consequently the respondents are not to be faulted for failure to accomplish this step.
This cause of action embracing alleged improper budget modification is without merit.
POINT III
Respondents failed to fulfill constitutional responsibilities.
The petitioners argue that the respondents Administrative Board and Judge have failed to fulfill their inherent constitu *429 tional duties in requiring adequate funding to carry out the responsibilities of the judicial system.
The petitioners point to the drastic cutback in court facilities heretofore existing, while caseloads and court procedures continue to increase. In the face of this, petitioners contend that the additional budget cuts contemplated herein required that the Judicial Conference implement its inherent constitutional powers, and mandate the appropriation of adequate funds.
The respondents deny the allegation and challenge the standing of the petitioners to bring this cause of action.
The use of the inherent constitutional powers of the court, when sought to be exercised by individual Judges, is an awesome venture and should not be lightly undertaken.
The frustration felt by the petitioner Judges is more than understandable. Their complaints of inadequacies, both presently existing and those envisaged by the contemplated cuts, have been recognized and cogently presented to the budget authorities, both by the State Administrative Judge and Deputy Director Preiser.
Reason, logic, prudence, wisdom, duty and obligation dictate, command, require and compel that the judicial system co-operate, where possible, with the executive and legislative branches of government at all times. This is all the more true in the face of crisis conditions. Here the State and city declared the existence of a fiscal emergency in the City of New York. Special sessions of the Legislature were called. The national Congress is currently debating the problem.
It is not only the judicial system that has suffered from budget curtailment; every agency of government in the city has been affected. The hue and cry rise in every quarter. So it cannot be claimed that discrimination was practised against the judiciary.
To show that the percentage of cut varies from agency to agency does not, per se, establish a case. Obviously there are many variables.
Obviously the Administrative Board considered the unhappy alternatives and in the face of the facts took the action reflected in the current budget.
A presumption of regularity attaches to the actions of the board. It is not sufficient, therefore, for the petitioners to say that the respondent board was obligated to use mandamus *430 powers, if necessary, to raise sufficient funds for court administration. It is not a proper exercise of discretion to tilt with windmills nor to walk out in the desert in search of water nor to sue a bankrupt for funds that he does not possess.
In light of existing circumstances I do not believe that it can be said that the Administrative Board abandoned its duties or abused its discretion in the measure of budgetary co-operation accorded to the city. Certainly no such finding could be made absent a hearing on the issue.
It would also seem that the petitioner Judges have no standing to maintain this third cause of action.
It would appear that the inherent power of the judiciary to mandamus governmental authority is a collective power which inheres in the judiciary as a whole, rather than in individual Justices. Certainly it was never contemplated that each and every Judge in the State may go off on a frolic of his or her own making. And in this instance there is no safety in numbers, because the Administrative Board and Judge have been given broad supervisory powers over the unified court system. Authority is centered therein, including budget formulation. Their acts are wrapped in a presumption of constitutionality. Restraint is the hallmark of the judiciary. At a minimum, absent a clear showing of emergent conditions, individual Justices may not usurp the duties and responsibilities of central, duly constituted authority.
Under the circumstances, I find that the petitioners have no standing to make this challenge. Accordingly the petitioners’ third cause of action falls.
CONCLUSION
Since the petitioners have demonstrated in their first cause of action that the respondents have acted contrary to law in terminating the positions of Confidential Attendants to Supreme Court Justices, First Judicial District, the petitioners’ application to vacate and set aside said determination is granted in all respects. The petitioner confidential attendants shall be continued in their appointed positions and their salaries continued to be paid.