*1082 OPINION OF THE COURT
Herbert Kramer, J.
Can a minority defendant use his peremptory challenges to discriminate against majority jurors?[2] Put another way, does Batson v Kentucky (476 US 79) apply to defendants? Other important issues necessary for determination are: (1) whether the government is entitled to a trial by jury composed of a fair cross section of the community; (2) whether defendant’s exercise of peremptory challenges constitutes "State action”; (3) whether white potential jurors constitute "cognizable” groups; and (4) whether the People have standing to object to discrimination against a juror.
Defendant has been indicted for the crime of criminal possession of a weapon in the third degree (two counts). The central trial issue is the credibility of two white police officers who say they saw this defendant in possession of two guns. Defendant and a civilian witness claim that the guns were not in Gary M.’s possession.
HISTORY OF PEREMPTORY CHALLENGES[3]
In Swain v Alabama (380 US 202) the court held that the Equal Protection Clause of the Fourteenth Amendment does not require a prosecutor to explain the exercise of his peremptory challenges even when it is suspected that the use is racially motivated. Swain did not address the Sixth Amendment right to a jury trial, because the Supreme Court had not yet decided that it applied to the States.
Three years later in Duncan v Louisiana (391 US 145) the Supreme Court ruled that the Sixth Amendment applies to the States. Thereafter, the Supreme Court held that the Sixth Amendment right to a jury trial is violated when a State excludes from the jury venire persons on the basis of their race or sex (Taylor v Louisiana, 419 US 522; Duren v Missouri, 439 US 357). However, the court has never applied the "fair cross section” requirement to a petit jury.
In contrast, some State courts have held that the use of peremptory challenges to strike petit jurors on the basis of *1083 their race was violative of their State Constitution guarantees of a fair cross section (People v Wheeler, 22 Cal 3d 258, 583 P2d 748; Commonwealth v Soares, 377 Mass 461, 387 NE2d 499, cert denied 444 US 881; State v Crespin, 94 NM 486, 612 P2d 716; State v Neil, 457 So 2d 481 [Fla]; State v Gilmore, 103 NJ 508, 511 A2d 1150).
In People v Kagan (101 Misc 2d 274) the court held that it was a violation of NY Constitution, article I, § 1 when the prosecutor exercised his peremptory challenges to exclude persons of the Jewish faith. Thereafter, in People v Thompson (79 AD2d 87, supra), the Appellate Division, Second Department, also ruled it a violation of the New York State Constitution when the prosecution uses peremptory challenges to exclude black potential jurors.
However, in People v McCray (57 NY2d 542, cert denied 461 US 961) the Court of Appeals, in a 4-to-3 decision, ruled to the contrary. The court held that neither article I, § 1 nor article I, § 11 of the NY Constitution permits a court to interfere with the use of peremptory challenges. The court held that these clauses afforded no greater protection than do the parallel Federal constitutional clauses. The court stated that the Sixth Amendment right to fair cross section did not apply to petit jurors (at 550) and (citing Swain v Alabama, 380 US 202, supra) that the Equal Protection Clause of the US Constitution was not violated.
McCray applied to the Federal District Court for his release which was granted, holding that the Sixth Amendment required scrutiny of discriminatory prosecutorial peremptory challenges (McCray v Abrams, 576 F Supp 1244). The United States Court of Appeals, Second Circuit, remanded the McCray case for a hearing but held that the Sixth Amendment prohibited discriminatory use of peremptory challenges.[4]
Approximately lVz years later the Supreme Court decided Batson v Kentucky (476 US 79, supra). The court held that inquiry into the prosecutor’s use of peremptory challenges is mandated by the Equal Protection Clause of the Fourteenth Amendment whenever a defendant shows prima facially that the prosecutor discriminated.
Six days after Batson (supra), the Supreme Court decided *1084 Lockhart v McCree (476 US 162). The court ruled that the defendant’s Sixth Amendment rights were not violated by-upholding a challenge for cause to jurors who were opposed to the death penalty. The court said that the Sixth Amendment does not apply to petit jurors and that jurors who were opposed to the death penalty did not constitute a "distinctive group” for the purposes of the fair cross section requirement.
TRIAL BY JURY
Article I, § 2 of the NY Constitution reads as follows: "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever”. The language does not specify that the right to trial by jury is exclusively that of an accused. This article does not use the phrase "accused shall enjoy” or as other provisions of the New York State Constitution "no person shall” or the "right of the people”.
In Cancemi v People (18 NY 128) the Court of Appeals held that a defendant and the prosecutor could not consent to a waiver of the right to trial by jury, because "society” has a right to that particular mode of trial. Similarly, the United States Supreme Court had said in Singer v United States (380 US 24, 36): "The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result.” The government and the defendant have the right to trial by a jury (United States v Radford, 452 F2d 332, 335 ["The government’s right to a jury trial”]; see also, United States v Martin, 704 F2d 267, 271 ["public interest in jury trials” or "societal interest”]).
The right to a jury trial includes the right to a fair cross section of the community (Taylor v Louisiana, 419 US 522; Thiel v Southern Pac. Co., 328 US 217, 220). Both society and defendant have a right that any trial conducted be fair and impartial (People v Guzman, 125 Misc 2d 457, 467). As such, the jury selected must be from a fair cross section of the community.
The issue remains, however, whether the fair cross section requirement applies to petit jurors. The post -Lockhart (476 US 162, supra) courts are divided.
Some courts feel that Lockhart (supra) precludes application *1085 of the fair cross section requirement to the petit jurors, and therefore to peremptory challenges of petit jurors (People v Treece, 159 Ill App 3d 397, 111 Ill Dec 66, 511 NE2d 1361, lv denied 117 Ill 2d 552, 115 Ill Dec 408, 517 NE2d 1094; Teague v Lane, 820 F2d 832; Lindsey v Smith, 820 F2d 1137, reh denied 828 F2d 775, petition for cert filed Oct. 3, 1987; United States v Forbes, 816 F2d 1006, 1011, n 8; United States v Thompson, 827 F2d 1254, 1257, n 2, supra).
Other courts disagree. They hold that the Sixth Amendment includes a right to a "possibility” of obtaining a fair cross section of the community at the petit jury level. While the Sixth Amendment does not require the petit jury to mirror the community, it does require that the litigants at least have the possibility of such. Thus, when peremptory challenges are racially motivated, the "possibility” of a fair cross section of the community is eliminated (Fields v People, 732 P2d 1145 [Colo]; Booker v Jabe, 775 F2d 762, vacated sub nom. Michigan v Booker, 478 US 1001, upon remand 801 F2d 871, cert denied 478 US 1001, 107 S Ct 910, 93 L Ed 2d 860; Roman v Abrams, 822 F2d 214; United States ex rel. Yates v Hardiman, 656 F Supp 1006, revd without published opn 830 F2d 195, petition for cert filed Nov. 9, 1987; State v Smith, 737 SW2d 731 [Mo], petition for cert filed Jan. 1, 1988 [see, dissenting opn, Manford, J., at 735-743]).
Support for the "possibility” of a fair cross section requirement can be found in the rationale of the Supreme Court in Ballew v Georgia (435 US 223) and Williams v Florida (399 US 78). In Williams the court found a jury of six sufficient to satisfy the Federal Constitution, because it provided for "a fair possibility for obtaining a representative cross section of the community” (at 100 [emphasis supplied]). In contrast, in Ballew (supra,), the court held that a five-person jury was insufficient and unconstitutional because it did not provide sufficient numbers to insure a fair cross section of the community (see, White, J., concurring opn, 435 US 223, 245).
In McCray (57 NY2d 542, supra) our Court of Appeals held that the Sixth Amendment cross section requirement is not applicable to the petit jury. The court expressed its desire for uniformity between State and Federal Constitutions. The underlying thesis of the McCray case is questionable. McCray relied heavily on Swain v Alabama (380 US 202, supra), which has been substantially modified by Batson v Kentucky (476 US 79, supra). Also, the Federal courts themselves are divided on *1086 whether there exists a right under the Sixth Amendment to the "possibility” of a fair cross section of the community. There is thus no uniformity as to the meaning of the Federal Constitution and it is impossible to accurately determine which Circuits are correct. McCray, therefore, can no longer be used for the purpose of stare decisis (see, People v Hobson, 39 NY2d 479, 486-491).
The court finds that the rationale of those cases adopting "possibility” of obtaining a fair cross section of the community rule in the Sixth Amendment is compelling and believes that it will ultimately be adopted. Further, adoption of this rule will further uniformity within the Federal Second Circuit.
There remains the issue whether the "possibility” of a fair cross section applies to defendant’s discriminatory use of his/ her peremptory challenges. In Booker v Jabe (775 F2d 762, 772, supra) the court said: "The spectacle of a defense counsel systematically excusing potential jurors because of their race or other shared group identity while the prosecutor and trial judge were constrained merely to observe, could only impair the public’s confidence in the integrity and impartiality of the resulting jury. Therefore, we hold that under the Sixth Amendment, neither prosecutor nor defense counsel may systematically exercise peremptory challenges to excuse members of a cognizable group from service on a criminal petit jury.”
Similarly, those States which have held that racially motivated prosecutorial peremptory challenges violated their State Constitution have also held that a defendant’s racially motivated peremptory challenges violated their State Constitution. (People v Pagel, 186 Cal App 3d Supp 1, 232 Cal Rptr 104, cert denied — US —, 107 S Ct 1953, 95 L Ed 2d 525; Holley v J& S Sweeping Co., 143 Cal App 3d 588, 192 Cal Rptr 74 [applying their rule to civil cases]; People v Neil, 457 So 2d 481 [Fla], supra; City of Miami v Cornett, 463 So 2d 399, appeal dismissed 469 So 2d 748 [Fla] [applying their rule to civil cases]; Commonwealth v Reid, 384 Mass 247, 424 NE2d 495; Commonwealth v Hutchinson, 395 Mass 568, 481 NE2d 188; State v Alvarado, 221 NJ Super 324, 534 A2d 440.)
The court finds no rational reason to distinguish between the District Attorney’s racially discriminatory use of peremptory challenges and the defendant’s. Racially discriminatory use of peremptory challenges violates both the New York *1087 State Constitution and the Federal Constitution’s right to a jury trial.[5]
EQUAL PROTECTION — FOURTEENTH AMENDMENT
In Batson v Kentucky (476 US 79, supra), a majority of the court mandated an inquiry into the prosecutor’s use of peremptory challenges whenever the defendant prima facially shows that the prosecutor used them in a racially discriminatory manner. The majority declined to decide whether the same principle applies to the defendant (at 89, n 12).
Chief Justice Burger, arguing against the Batson majority, said (476 US 79, 125-126, supra): "the clear and inescapable import of this novel holding will inevitably be to limit the use of this valuable tool [peremptory challenges] to both prosecutors and defense attorneys alike. Once the Court has held that prosecutors are limited in their use of peremptory challenges, could we rationally hold that defendants are not?”[6] Justice Marshall’s concurring opinion was more direct. He held that the prosecutor and defendant are bound by the same rules and that neither may exercise their peremptory challenges in a racially discriminatory manner.
Defendant disagrees with Justice Marshall, and claims there is no "State action” when peremptory challenges are exercised by a defendant.
The underlying premise of Batson (supra) is that prosecutorial racially motivated use of peremptory challenges violates the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment prohibits "State action” but not purely private discrimination, no matter how nefarious (Moose Lodge No. 107 v Irvis, 407 US 163; Civil Rights Cases, 109 US 3; Matter of Wilson, 59 NY2d 461, 476).
What constitutes "State action” is not always easy to determine (Moose Lodge No. 107 v Irvis, 407 US 163, 172, supra). It is determined by "sifting facts and weighing circumstances” (Burton v Wilmington Parking Auth., 365 US 715, 722). While *1088 individual factors may not in and of themselves constitute "State action” they may, when taken together (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 158).
In determining whether "State action” exists in this case, the court has considered the totality of the following factors:
1. The discrimination occurs during the course of a criminal action, in which the State as the plaintiff seeks to vindicate its police power (People v Persce, 204 NY 397; People v Morrill, 101 AD2d 927, lv denied 63 NY2d 948).
2. The person discriminating against the juror is an officer of the court, whose conduct and license is regulated by the State.[7]
3. Peremptory challenges must be made "within the courtroom” (CPL 270.15 [2]). Thus, the discrimination occurs on a State facility, run and operated by the State (Burton v Wilmington Parking Auth., 365 US 715, supra). Further, all courtrooms are presumptively open to the public (Judiciary Law § 4). Hence, the public will observe the court tolerating the alleged racial discrimination.
4. Peremptory challenges are not constitutionally mandated but are highly regulated rights granted by the State (Walter v People, 32 NY 147, 160; People v Thompson, 79 AD2d 87, 96, supra). The Legislature controls the number of challenges (CPL 270.25), the time of the challenges (People v Chmarzewski, 51 AD2d 554, 555; People v Harris, 84 AD2d 63, 93, affd 57 NY2d 335) and the place of the challenges (CPL 270.15).[8]
5. The discrimination alleged is racial. As stated in Under 21, Catholic Home Bur. for Dependent Children v City of New York (65 NY2d 344, 363): "it has become apparent that where racial discrimination by a private actor is involved, a lesser degree of State involvement than would otherwise be required will support a finding of 'State action’ (see, Adickes v Kress & Co., 398 US 144, 190-191 [Brennan, J., concurring in part, dissenting in part]; Taylor v Consolidated Edison Co., 552 F2d 39, 42, cert denied 434 US 845; Note, State Action: Theories For Applying Constitutional Restrictions To Private Activity, 74 Colum L Rev 656, 657-658, 661). More generally, govern *1089 ment has been permitted fewer contacts with private actors engaged in racial discrimination than with those otherwise acting in a manner which the government itself could not”. Consequently, fewer factors are necessary in a racial discrimination matter than in other types of discrimination.
6. After defendant exercises his peremptory challenge, "the court must exclude the person” (CPL 270.25 [1]). This is not a private agreement in which private persons voluntarily comply with private provisions to discriminate (Matter of Wilson, 59 NY2d 461, supra), rather application is made to the State for enforcement of defendant’s personal racial motivation (Shelley v Kraemer, 334 US 1; Lugar v Edmondson Oil Co., 457 US 922).[9] When defendant seeks the court’s assistance in his/her discriminatory purpose, the State may become a joint actor (Moose Lodge No. 107 v Irvis, 407 US 163, 179, supra).
7. It is the excluded juror against whom the discrimination is being practiced (Strauder v West Va., 100 US 303). The juror appears in court through the issuance of a summons by the State (see, Judiciary Law). The State requires the juror to appear at a State-designated place, location and time. Absent the State’s actions, the juror would not appear in the courtroom so that she/he can be discriminated against.
Thus, the State is not merely an observer of the discrimination, but a significant participant. It supplies the tools (peremptory challenges), the place (courtroom), the object (juror), the setting (criminal action), and enforces the discrimination (discharge of juror). The only thing the State does not do is make the decision to discriminate. Everything else is done or supplied by the State.
The court found "State action” when in the course of a proceeding commenced by the State to vindicate its police power, an officer of the court on State property exercising a State-granted right in a racially discriminatory manner, compels the court to remove from the petit jury a citizen summoned to the State facility by compulsion of law.
Consequently, when defendant exercised his peremptory *1090 challenges in a racially discriminatory manner, the Equal Protection of the Law Clause of the Fourteenth Amendment was violated.
BATSON REQUIREMENTS
In order to make a prima facie case, the complaining party must show: (1) that discrimination is being practiced against a cognizable group; (2) that the complainant is a member of that cognizable group, and (3) facts and other relevant circumstances raising an inference that the peremptory challenges were used for discriminatory purposes (People v Scott, 70 NY2d 420, 423).
It must first be determined if "white” jurors constitute a cognizable group under the Equal Protection Clause. In dicta in Strauder v West Va. (100 US 303, supra), the court stated that the Equal Protection Clause applies both to minorities as well as "white men” (at 308). In Adickes v Kress & Co. (398 US 144, supra), the court held that a white teacher’s equal protection rights were violated when a black-only restaurant failed to serve her because of her race. The court concludes that white jurors are a cognizable group under the Fourteenth Amendment Equal Protection Clause (see, Roman v Abrams, 822 F2d 214, 227-228, supra [holding "white jurors” are cognizable groups under the Sixth Amendment]).
Secondly, it must be determined if the complaining party, in this case the People of the State of New York, is of the same race as the excluded juror. Most courts have strictly enforced this "same race” or "same class” requirement (State v Smith, 737 SW2d 731, 732 [Mo], supra; People v Treece, 159 Ill App 3d 397, 111 Ill Dec 66, 511 NE2d 1361, 1368, supra; Catley v State, 726 SW2d 595, 597 [Tex]; but see, Chew v State, 71 Md App 681, 527 A2d 332, 337 [arguing that Batson, supra, does not make this a requirement], and Fields v People, 732 P2d 1145, 1151 [Colo], supra).[10]
The question may then be posed what is the race of the *1091 People of the State of New York (see, People v Seals, 153 Ill App 3d 417, 106 Ill Dec 316, 505 NE2d 1107 [race of a defendant born of a racially mixed marriage]). This question is improper. The same race requirement is nothing more than a standing issue (Batson v Kentucky, 476 US 79, 124, n 4 [Burger, Ch. J., dissenting], supra; People v Wells, 89 AD2d 1020, affd 60 NY2d 403, supra; United States v Musto, 540 F Supp 346, 353, affd 715 F2d 822, cert denied 468 US 1217). The issue then is does the District Attorney, as representative of the State, have standing to contest defendant’s discriminatory use of peremptory challenges.
In Batson v Kentucky (476 US 79, supra) the court identified three injured parties when a prosecutor uses peremptory challenges in a discriminatory manner: the accused, the excluded juror, and "the entire community” (476 US, at 87). Similarly in Ballard v United States (329 US 187, 195), the court identified the injured parties as follows: "The injury [from discrimination] is not limited to the defendant — there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.” (See also, Rose v Mitchell, 443 US 545, 556, supra.)
The State as representative of the community has standing to complain about an injury to the community, to the jury system and to the law as an institution.
Further, the excluded juror is a citizen of the State. As such, he is a member of the State and represented by it. Thus, when the District Attorney objects to the excluded juror’s discharge he acts as an agent for the excluded juror (National Motor Frgt. Assn. v United States, 372 US 246; Warth v Seldin, 422 US 490, 511).
Alternatively, the State has standing to assert the equal protection claims of the excluded jurors under the doctrine of jus tertii or third-party standing (Singleton v Wulff, 428 US 106). This concept permits a third party (the State in this case) who has suffered "injury in fact”[11] to assert the constitutional rights of others (the excluded jurors) where practical considerations prevent persons from asserting their own rights (Council of Greenburgh Civic Assns. v United States Postal Serv., 490 F Supp 157, revd on other grounds 453 US 114; *1092 Secretary of State of Md. v Munson & Co., 467 US 947; Eisenstadt v Baird, 405 US 438).
In determining whether third-party standing principles apply in a particular case, the court considers three factors: (1) the relationship of the litigant to the person whose right he seeks to assert, (2) the ability of the right holder to vindicate his or her own rights, and (3) the impact of the litigation on the third party’s interests (see, United States v Musto, 540 F Supp 346, 353, supra; Singleton v Wulff, 428 US 106, 114-116, supra).
The relationship here is that of State to citizen. As such, the doctrine of parens patriae imposes an obligation on the part of the State to protect the rights of its citizens. In this capacity, the State is as effective a proponent of the right as the excluded juror (Craig v Boren, 429 US 190, 193-194).
Regarding the excluded juror’s ability to vindicate his or her own rights, several obstacles exist (N. A. A. C. P. v Alabama, 357 US 449; Local 1814, Intl. Longshoremen’s Assn. v Waterfront Commn., 667 F2d 267). The excluded juror may not even be aware of his or her victimization. All that the juror knows is that he or she is excused. The discrimination may not become apparent until after the juror has been discharged or until after several minority jurors have been discharged. Consequently, the first juror discharged will not be present when the subsequent instances of discrimination occur. Further, the excluded juror cannot complain to the court since he or she is not a party litigant. Nor can a class action be commenced to prohibit the defendant’s discriminatory exercise of peremptory challenges given that each challenge is used against a single juror in a single trial.
The third consideration is the impact of the litigation on the nonlitigants’ rights (Eisenstadt v Baird, 405 US 438, 444, supra; Barrows v Jackson, 346 US 249). As previously discussed, the excluded jurors have no other forum for vindicating their rights. Therefore, those rights are likely "to be diluted or adversely affected” unless they are considered in a suit involving those who have a confidential relation to them (Griswold v Connecticut, 381 US 479, 481; Eisenstadt v Baird, 405 US 438, 444, supra; N. A. A. C. P. v Alabama, 357 US 449, supra). The failure of the State to pursue this action will materially impair a juror’s opportunity to sit on a petit jury, and fails to protect the juror from the stigma of discrimination (Craig v Boren, 429 US 190, 195, supra).
*1093 The court finds that the State has standing.[12]
The third requirement of Batson (supra) is the existence of relevant evidence that creates an inference that peremptory challenges were used for discriminatory purposes. In determining this issue the court has considered the following factors (see, Ex Parte Branch, — So 2d —, 42 Cr L Rptr 2079 [Ala]):
(1) Every peremptory challenge used by defendant was to discharge white persons;
(2) Blacks with the same qualifications as whites were not challenged, and were seated on the jury;
(3) The whites challenged were all of different backgrounds and the only common characteristic was the color of their skin;
(4) Defendant requested that a black juror be disqualified for cause. He argued that such a juror had a state-of-mind precluding him from being fair. Yet, when the court denied the challenge the defendant did not exercise his peremptory challenge to remove that juror. At that time defendant had remaining virtually all of his peremptory challenges.
(5) The People, in establishing a prima facie case, may rely on the fact that peremptory challenges promote discrimination by those inclined to discriminate (People v Scott, 70 NY2d 420, 423, supra).
The court found the People had established a prima facie case under Batson (supra).
The defendant then offered an explanation for his challenges, both in open court and ex parte in camera. (United States v Davis, 809 F2d 1194, 1200-1202, cert denied — US —, 107 S Ct 3234, 97 L Ed 2d 740; United States v Tucker, 836 F2d 334, cert denied — US —, 106 S Ct 3338, reh denied — US —, 107 S Ct 23, 92 L Ed 2d 774 [ex parte in camera proper— contrary United States v Thompson, 827 F2d 1254].) The explanation need not rise to the level of a challenge for cause (Batson v Kentucky, 476 US 79, 97, supra). It must however be reasonably related to some factor in the case (Clark v City of *1094 Bridgeport, 645 F Supp 890, supra).[13] Defendant’s explanation failed totally to show how his peremptory challenges were related to the case.
The court held that the defendant had discriminated in the use of peremptory challenges based upon race and that Batson (supra) had been violated. The jury was then discharged, because of the length of time in conducting the proceeding, and because several jurors had already been discharged and returned to the jury pool.[14]
ARTICLE I, § 11, NY CONSTITUTION
The first sentence of article I, § 11, as is pertinent, reads as follows: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” The wording is virtually identical to that contained in the Fourteenth Amendment of the US Constitution. As such, the first sentence of article I, § 11 affords no greater rights than does its Federal counterpart (Matter of Esler v Walters, 56 NY2d 306, 313-314; People v Smith, 97 Misc 2d 115, 118; People v Reilly, 85 Misc 2d 702, 705; 20 NY Jur 2d, Constitutional Law, § 345, at 492-493). Therefore, what has previously been stated regarding the Federal Equal Protection Clause is equally applicable to the first sentence of article I, § 11 of the NY Constitution.
The second sentence of article I, § 11, as is relevant, states: "No person shall, because of race * * * be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution” (see also, Civil Rights Law § 40-c [2]). This sentence prohibits private discrimination against another with regard to "civil rights” (Dorsey v Stuyvesant Town Corp., 299 NY 512, 531, cert denied 339 US 981; Holy Spirit Assn. v New York State Congress of Parents & Teachers, 95 Misc 2d 548, 552). Civil rights are those denominated in the Constitution, the Civil Rights Law or other statutes (Dorsey v Stuyvesant Town Corp., supra, at 531).
*1095 The New York State Constitution guarantees to each member of the State the rights and privileges of citizenship (art I, § 1). In Matter of Lewinson v Crews (28 AD2d 111, affd 21 NY2d 898, appeal dismissed 393 US 13), Justice Hopkins, in his dissent, said (at 114): "Traditionally, the right * * * to serve as a juror has been accounted to be a privilege of citizenship.” Similarly, the United States Supreme Court has said, "Jury service is * * * a privilege of citizenship” (Thiel v Southern Pac. Co., 328 US 217, 224, supra). Thus, the New York Constitution provides a citizen with a right to serve on a petit jury (see, People v Briggins, 67 AD2d 1004, 1006 [Titone, J., dissenting], revd 50 NY2d 302; People v Guzman, 125 Misc 2d 457, 469, n 38, supra, and cases cited therein).
Civil Rights Law § 13 also provides a citizen with a right to serve on a petit jury. That section, as is pertinent, states: "No citizen of the state possessing all other qualifications which are or may be required or prescribed by law, shall be disqualified to serve as a * * * petit juror in any court of this state on account of race”. Thus, Civil Rights Law § 13 provides that every citizen of this State has the right to serve as a juror without consideration of race.
Additional statutory authority for the right to serve as a juror can be found in Judiciary Law § 500. That statute provides: "[A]ll eligible citizens shall have the opportunity to serve on * * * petit juries in the courts of this state”. When a defendant exercises peremptory challenges in a racially discriminatory manner he deprives the juror of the opportunity to serve as a petit juror.
Based on the constitutional right to citizenship, Civil Rights Law § 13, and Judiciary Law § 500, the court finds that a citizen has a "civil right” to serve on a petit jury. Even private discrimination against a private person in the exercise of that person’s civil rights is prohibited by article I, § 11, second sentence.
When defendant requests that a juror be discharged, and that request is based upon the juror’s race, the second sentence of article I, § 11 is violated.[15]
CONCLUSION
Silence where there is a duty to speak may well constitute *1096 consent or an admission (see, e.g., People v Allen, 300 NY 222, 225 [silence can be an admission]; People v Gaggi, 104 AD2d 422, appeal dismissed 65 NY2d 636 [silence equals consent to an adjournment]; People v Schof, 136 AD2d 578 [failure to object to police entry is consent]). If the court remained silent in the face of evidence of discrimination the only conclusion that could be drawn is that the court agrees or condones such actions. A court cannot sit idly by when in open court a request is made to discriminate against a private citizen. The court’s granting of such a motion could only be viewed as judicial discrimination. The court will not be put in a position where it can be viewed as having accepted discrimination.
The court notes the commendable efforts of the newly proposed standards of conduct and particularly Code of Professional Responsibility EC 1-17 and DR 1-102 (a) (6), both of which prohibit discrimination against all "persons involved in the legal process”. The Chief Judge’s formation of a task force to examine bias in the courts is another step toward eliminating the perception of judicial prejudice (NYLJ, Jan. 27, 1988, at 29, col 1).
Discrimination, no matter by whom, destroys the very fabric of the democratic ideal that all men are created equal.[16] Lawyers who discharge jurors based upon their race contribute to the continuation of racial prejudice. This court will not support and will not sit idly by when an attorney conducts himself or herself in such a manner.
For all of the above reasons, the court held that Batson (supra) applies to defendant’s peremptory challenges.

. The question can be poignantly posed whether a Ku Klux Klan defendant can use his peremptory challenges to remove all blacks (see, Chew v State, 71 Md App 681, 527 A2d 332, 338, cert granted 311 Md 301, 534 A2d 369).

. For a complete history of peremptory challenges in New York, see People v Thompson (79 AD2d 87, appeal withdrawn 55 NY2d 879).

. After Batson v Kentucky (476 US 79), the Supreme Court vacated the judgment in McCray v Abrams (478 US 1001). After remand the appeal was withdrawn (see, Roman v Abrams, 822 F2d 214, 225, petition for cert filed Dec. 12, 1987).

. The Sixth Amendment and Due Process Clause of the Fourteenth Amendment contain no requirement that the party claiming a violation thereof be of the same race as the excluded jurors (Duren v Missouri, 439 US 357, 359, n 1; Taylor v Louisiana, 419 US 522; Peters v Kiff, 407 US 493; People v Guzman, 60 NY2d 403, 409, cert denied 466 US 951; Hobby v United States, 468 US 339).

. The same attitude was expressed by the United States Court of Appeals, Seventh Circuit, pr e-Batson (United States v Clark, 737 F2d 679, 682).

. Of course this is not, in and of itself, sufficient to constitute "State action” (Polk County v Dodson, 454 US 312). It is a factor to be considered.

. This, in and of itself, is not sufficient to constitute "State action” (Blum v Yaretsky, 457 US 991; Rendell-Baker v Kohn, 457 US 830; but see, Chew v State, 71 Md App 681, 527 A2d 332, 337, supra). This is an important factor (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 158).

. The court rejects defendant’s interpretation of Lugar v Edmondson Oil Co. (457 US 922). Nothing in Lugar holds the statute to be unconstitutional. Lugar found "State action” by "the help of State officials” (at 933). It sets forth a two-prong test, namely, the creation of a right by the State, and a State actor. In this case peremptory challenges are State-created rights and the court, when it discharges the juror, is a State actor. Nonetheless, the court does not decide whether under the Lugar test there is in this case "State action”.

. Whether the "same race” or "same class” is an actual requirement of the Equal Protection Clause or is merely reflective of the facts is unclear (compare, United States v Coletta, 682 F2d 820, cert denied 459 US 1202, with United States v Perez-Hemandez, 672 F2d 1380; see generally, Annotation, 68 ALR Fed 175). Both the Supreme Court (Alexander v Louisiana, 405 US 625, 633-634) and the New York Court of Appeals (People v Guzman, 60 NY2d 403, 409, n 2) have declined to decide the issue. The Appellate Division, Second Department, has ruled that it is a requirement of the Equal Protection Clause (People v Wells, 89 AD2d 1020, affd 60 NY2d 403).

. The court previously determined that the State did in fact suffer from the defendant’s exercise of his peremptory challenges in a racially discriminatory manner.

. The court does not decide whether it can entertain this claim under its supervisory power (Clark v City of Bridgeport, 645 F Supp 890, 897 [entertaining Batson claim of white defendant claiming discrimination against blacks]).

. The court does not resolve the issue whether Batson v Kentucky (476 US 79) applies to civil cases (see, Clark v City of Bridgeport, 645 F Supp 890; King v County of Nassau, 581 F Supp 493, and cases cited in the previous section on trial by jury; cf., Esposito v Buonome, 642 F Supp 760).

. A claim was made by defendant that the prosecutor had exercised her challenges in a racially discriminatory manner. The court found that the defendant had established a prima facie case. The explanation given by the People was satisfactory (People v Harper, 124 AD2d 593, lv denied 69 NY2d 1004; Roman v Abrams, 822 F2d 214, petition for cert filed Dec. 12, 1987). At the time of the discharge of the jurors, there were 7 blacks and 3 whites on the panel.

. The court notes that Civil Rights Law § 13 may well provide an independent statutory basis for this court’s conclusions.

. This court does not decide whether defendant’s use of peremptory challenges violates the Thirteenth Amendment of the US Constitution (Jones v Mayer Co., 392 US 409). That amendment prohibits private discrimination which places "badges” of slavery on minority persons.