[710 NYS2d 146]

In the Matter of NEW YORK STATE ASSOCIATION OF CRIMINAL DEFENSE LAWYERS et al., Appellants, v JUDITH S. KAYE, as Chief Judge of the New York State Court of Appeals, et al., Respondents.

Third Department, June 22, 2000

## APPEARANCES OF COUNSEL

*Paul, Weiss, Rifkind, Wharton & Garrison,* New York City (*Jay Cohen* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Alicia R. Ouellette* of counsel), for respondents.

## OPINION OF THE COURT

CREW III, J. P.

In 1995, the Legislature reinstated the death penalty and, in conjunction therewith, enacted Judiciary Law § 35-b to provide a mechanism by which indigent defendants subject to the death penalty would be afforded representation by qualified counsel. In order to ensure that qualified attorneys were available, the legislation provided for a screening panel in each Judicial Department consisting of four members (*see,* Judiciary Law § 35-b [5] [a]). Each panel, in consultation with the Administrative Board of the Courts, was charged with promulgating and updating a fee schedule applicable to appointed counsel, with such schedule subject to the approval of respondents, the Chief Judge and Associate Judges of the Court of Appeals.

In November 1996, respondents approved the initial fee schedules submitted for each of the four Judicial Departments. All four of the schedules provided for hourly fees of $175 for lead counsel, $150 for associate counsel, $40 for legal assistants and $25 for paralegal assistants.

In September 1997, respondents directed the panels to reexamine the fee schedules in light of the empirical data gathered as of that time. Specifically, respondents directed each of the panels to, *inter alia,* assess whether the existing schedules were efficacious and whether separate rates should be established for pretrial and trial work and in-court and out-of-court work. Ultimately, the Administrative Board of the Courts recommended, *inter alia,* that the hourly fee for lead counsel be reduced to $125 for postnotice representation and $100 for prenotice representation and, further, that the fee for associate counsel be reduced to $100 and $75, respectively. The panels of the Second, Third and Fourth Departments adopted

the Board's recommendations while the First Department panel did not. Thereafter, by order dated December 16, 1998, respondents approved the proposed reductions to the existing fees for all four Departments.

In April 1999 petitioners, four individual attorneys certified to accept capital cases and the New York State Association of Criminal Defense Lawyers, on behalf of its members so certified, commenced this proceeding seeking to annul respondents' order approving the reduction in fees, claiming that respondents acted ultra vires when they revised the rates in the First Department, and challenging as arbitrary and capricious the over-all reduction in said rates. Respondents answered contending, *inter alia*, that petitioners lacked standing. Supreme Court, while concluding that petitioners had standing, dismissed the petition on grounds that respondents were authorized to approve the revision for the First Department and that the over-all rates were rational and supported by the record as a whole. Petitioners now appeal.

Because we are of the view that petitioners lack standing to challenge the revised fee schedule, we affirm. "For standing to sue, petitioners must show that they have suffered an injury in fact, distinct from that of the general public * * * [and] that the injury claimed falls within the zone of interests to be protected by the [administrative action] challenged" (*Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 587 [citations omitted]; *see, Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 771-774). Additionally, where a petitioner is an organization maintaining the action on behalf of its members, proper standing requires such petitioner to demonstrate, *inter alia*, "a harmful effect on at least one of its members" (*Rudder v Pataki*, 93 NY2d 273, 278; *see, Matter of Dental Socy. v Carey*, 61 NY2d 330, 333; *Public Util. Law Project v New York State Pub. Serv. Commn.*, 252 AD2d 55, 59). Notably, the burden of demonstrating standing is on the petitioner (*see, Society of Plastics Indus. v County of Suffolk, supra*, at 769).

Petitioners assert that respondents' rate revision has caused, and will continue to cause, them to suffer "the economic consequences of the reduced rates established by [respondents] * * * [and that they] will likely be burdened by even more capital cases at reduced rates, to the extent that adequate counsel will not volunteer, or perhaps will resign from, appointment to the capital cases." Simply stated, the protection of petitioners' pecuniary interests is not encompassed by the legislative

purpose of Judiciary Law § 35-b (5) (a) and the injuries asserted, therefore, are not within the zone of interest required to confer standing (*see, Society of Plastics Indus. v County of Suffolk, supra*, at 773-774). The legislative purpose of Judiciary Law § 35-b (5) (a) is made plain by the very language of the statute, to wit, to "ensure that qualified attorneys are available to represent [capital] defendants." As such, petitioners' claimed injuries of economic loss and greater caseload burden do not fall within the zone of interest protected.

Moreover, petitioners lack standing under the rationale of *Matter of Dental Socy. v Carey* (61 NY2d 330, *supra*). There, the Court of Appeals found that the petitioner, who represented Medicaid providers, had standing to challenge the Medicaid reimbursement rate for dental services because the record demonstrated that as a result of the outdated reimbursement rates, only 5% of the licensed dentists in this State were Medicaid providers; thus, eligible persons were being deprived of dental care. Here, there is no evidence that capital defendants are being, or will be, deprived of adequate representation as the result of the fee revision.

To the extent that petitioners rely upon the results of a survey undertaken by the New York State Association of Criminal Defense Lawyers sent to the 62 attorneys certified as eligible to handle capital cases and the 77 attorneys who have been trained to serve as lead counsel and who have applied for certification, we find such results to be less than compelling. Not only is the survey largely self-serving, it clearly does not offer empirical evidence that the pool of qualified attorneys will be rendered inadequate by reason of the revised fee schedules. The survey results, at most, indicate that the pool of qualified attorneys *might* be diminished and that hourly rates below $150 will affect the willingness of *some* attorneys to accept capital cases. Interestingly, nearly 40% of attorneys certified and 70% of those who have applied for certification failed to respond at all. In short, the implied harm asserted by petitioners is at best " 'tenuous' and 'ephemeral' * * * which is insufficient to trigger judicial intervention" (*Rudder v Pataki*, 93 NY2d 273, 279, *supra*). To the extent that our decision in *Matter of State Farm Mut. Auto. Ins. Co. v Levin* (263 AD2d 233, *lv denied* 95 NY2d 754) suggests a contrary result, we find that case to be distinguishable from the matter now before us.

Petitioners' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

SPAIN, CARPINELLO, GRAFFEO and MUGGLIN, JJ., concur.
Ordered that the judgment is affirmed, without costs.