OPINION OF THE COURT
Lucindo Suarez, J.
The primary issues in this motion to dismiss the complaint are whether plaintiff bar association has standing to challenge the statutory compensation rates paid to assigned private counsel, and whether such challenge presents a justiciable claim. This Court answers both questions in the affirmative. The secondary and tertiary issues are whether defendant Governor George E. Pataki is a proper party to this action, and whether plaintiff New York County Lawyers’ Association has stated a cause of action in its tortious interference with contract claim. This Court answers both questions in the negative.
New York County Lawyers’ Association (NYCLA) commenced this action against New York State Governor George E. Pataki and the State of New York (collectively State) seeking declaratory and injunctive relief, pursuant to CPLR 3001 and 6301, and 42 USC § 1983, challenging the compensation levels and limits for assigned private counsel, and the distinction between in-court and out-of-court work, as set by County Law § 722-b, Family Court Act § 245, and Judiciary Law § 35, and barring interference with performance of its obligations under the assigned counsel program to prevent state and federal constitutional violations that result in ineffective legal representation to children in Family Court proceedings and indigent adults in Criminal Court actions at the trial and appellate levels in New York City. NYCLA alleges that the State’s failure to take measures to ensure adequate levels of compensation has placed the system of assigned counsel on the brink of collapse, creating an imminent threat of widespread due process and right to counsel violations, and allowed the First Department’s assigned counsel program to deteriorate to a point where it subjects children and indigent adults to a severe and unacceptable risk where meaningful and effective legal representation is no longer provided.
*779 The State moves to dismiss the complaint pursuant to CPLR 3211 (a) (3) and (7) contending that: NYCLA lacks organizational and third-party standing to raise the claims asserted as it seeks a declaration of the rights of its members, and of some of its members’ clients and potential clients, and that the complaint demonstrates nothing more than a speculative injury or risk to their rights; NYCLA is not the proper organization to assert the constitutional rights of the individual and potential clients, particularly claims involving ineffective assistance of counsel because its members have or may have a direct conflict with those rights, and the individual clients have the ability to litigate any such claims by postconviction remedies; the complaint fails to state a justiciable case or controversy against Governor PataM as he is not the official to whom the Legislature delegated responsibility to implement the provisions of the challenged statutes, is not a necessary party, and is entitled to absolute legislative immunity; the relief sought interferes with executive and legislative discretion, is not subject to judicial review, and would require an order directing the expenditure of state funds; and NYCLA fails to state a cause of action on its tortious interference with contract claim.
As enacted, County Law § 722-fo initially set the compensation rates for assigned counsel at $15 per hour for in-court time and $10 per hour for out-of-court time, with monetary caps of $500 and $300, respectively, for felony and misdemeanor representation. These fees have been increased twice since 1965. Currently, participating attorneys receive $25 per hour for out-of-court work and $40 for in-court work. There is a monetary cap of $800 for all misdemeanor and Family Court cases and $1,200 for felonies and appellate matters. Compensation in excess of the above rates may be obtained from the trial court under “extraordinary circumstances,” which determination is not subject to judicial review. (Matter of Werfel v Agresta, 36 NY2d 624.) These rates have been in effect since 1986. Only the monetary cap provisions of County Law § 722-b and Judiciary Law § 35 (3) are the subject of this lawsuit.
The question of whether an individual or organization is a proper party to bring an action is an aspect of justiciability which must be considered at the outset of the litigation. (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9.) The fact that this case may have political overtones, involve public policy, or possibly touch upon executive or legislative functions does not negate its justiciability. (Matter of Boung Jae Jang v Brown, 161 AD2d 49, 55; see also, McCain v Koch, 70 NY2d 109.) *780 Courts have been, and continue to be, called upon to protect the rights of the indigent and the administration of the courts, to insure compliance with the State’s obligation. (See, Matter of McCoy v Mayor of City of N. Y., 73 Misc 2d 508 [city had obligation to appropriate adequate funds for operation of Housing Part of the Civil Court]; Zarabia v Bradshaw, 185 Ariz 1, 912 P2d 5 [court ordered a hearing to protect the rights of indigent criminal defendants to determine new compensation rates]; Carlson v State, 247 Ind 631, 220 NE2d 532 [court is empowered to order that it be provided reasonable and necessary operating expenses].) Accordingly, when the Legislature creates a duty of compensation “it is within the courts’ competence to ascertain whether [the State] has satisfied [that] duty * * * and, if it has not, to direct that the [State] proceed forthwith to do so.” (See, Klostermann v Cuomo, 61 NY2d 525, 531 [nondiscretionary statutory scheme obligated the state to provide continued treatment and adequate housing for persons treated for mental illness]; see also, Jiggetts v Grinker, 75 NY2d 411, 415 [commissioner must establish adequate shelter allowances that bear a reasonable relation to the cost of housing in New York City].)
The State’s contentions that sustaining NYCLA’s claims would require an order directing the expenditure of state funds and impose judicial review of the Legislature’s refusal or present reluctance to amend or modify its choice of compensation levels “is particularly unconvincing when uttered in response to a claim that existing conditions violate an individual’s constitutional rights” (Klostermann, supra, at 537), and pose no barrier to a judicial declaration, if necessary, of the constitutional infirmities of the monetary cap provisions. Furthermore, the State’s claim that any finding by this Court that the compensation rates are unconstitutional would constitute judicial interference with gubernatorial legislative immunity and both executive and legislative discretion is premature as the only issue before this Court is the procedural question of whether NYCLA has pleaded a prima facie case. (See, Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 316, n 4.)
This Court’s power to entertain a claim or direct enforcement of a duty is dependent upon NYCLA establishing standing. NYCLA claims third-party and organizational standing: third party — on behalf of its association members’ assigned panel clients; and organizational — on behalf of its association members who are members of the assigned counsel panels.
*781 Generally, there are three categories that provide the standing necessary to bring a claim: direct, third party and organizational. All, as an initial determination, require the litigant party to demonstrate a grievance or injury different from the public at large, subject to prudential limitations, and, if applicable, requisite representational standing principles. The litigant party must show, under the federal counterpart of injury under article III, § 2 of the United States Constitution: (1) a personal injury; (2) proximately caused by defendant’s alleged unlawful conduct; (3) which is likely to be redressed by the requested relief. (See, Allen v Wright, 468 US 737, 751.) This requirement has been adopted by New York case law, although it is not a constitutional mandate. (See, New York Criminal Bar Assn. v Newton, 33 F Supp 2d 289, 293.)
Direct or common-law standing requires that the litigant party shows it has suffered a grievance, harm or injury in fact. Added to this essential principle of direct standing are court-imposed rules of self-restraint also referred to as rules of prudential limitations, to wit: a general prohibition on the litigant party raising the legal rights of the nonlitigant third party; a ban on adjudication of generalized grievances more appropriately addressed by the representative branches of government; and, in the case of administrative action or inaction, the requirement that the interest or injury asserted fall within the zone of interests protected by the statute or other governmental enactment. Administrative action in the context of standing suggests governmental exercise in its broadest form. (See and compare, Rudder v Pataki, 93 NY2d 273 [executive order]; Saratoga County Chamber of Commerce v Pataki, 275 AD2d 145 [gubernatorial compact]; Matter of New York State Assn. of Criminal Defense Lawyers v Kaye, 269 AD2d 14 [administrative order]; Matter of State Farm Mut. Auto. Ins. Co. v Levin, 263 AD2d 233 [statute]; Matter of Professional Ins. Agents v New York State Ins. Dept., 197 AD2d 258 [governmental legal opinion]; New York Criminal Bar Assn. v Newton, supra [unofficial judicial administrative policy].) A further established principle of direct standing is that the injury in fact is different from the public at large. (See, Society of Plastics Indus. v County of Suffolk, 77 NY2d 761.)
NYCLA claims third-party standing to assert the rights of its member attorneys’ County Law article 18-B and Judiciary Law § 35 clients. The New York Court of Appeals has not definitively addressed the requirements of third-party standing; therefore, this Court will partially rely upon a federal case *782 law analysis. Third-party standing or jus tertii requires that the litigant party shows it has direct standing, and in addition that the court consider: (1) the relationship of the litigant to the person whose right he, she or it seeks to assert; (2) the ability of the rightholder to vindicate his or her rights; and (3) the risk that the third party’s rights or interests will be diluted or adversely affected unless the litigation is permitted to proceed. (See, Singleton v Wulff, 428 US 106, 114-116; Eisenstadt v Baird, 405 US 438, 444-445; Griswold v Connecticut, 381 US 479, 481; United States v Musto, 540 F Supp 346, 353; People v Gary M., 138 Misc 2d 1081, 1091.) This Court finds NYCLA has third-party standing.
NYCLA satisfies the test for direct standing as it has suffered an injury in fact within the zone of interests protected by the statute, different from the public at large. Where governmental administrative action is present, the term “statute,” considered in its broadest sense, includes court rules. The court rules applicable here are those derivatively enacted as a direct result of article 18-B of the County Law, Judiciary Law § 35, pertinent provisions of the Family Court Act, Executive Order No. 178 of the Mayor of the City of New York, and the Assigned Counsel Plan approved by the Administrative Board of the Judicial Conference. (See, 22 NYCRR 611.1, 612.0.)
NYCLA’s injury within the zone of interests protected by these court rules is its inability to discharge its responsibilities to provide and maintain a list of available and adequately trained attorneys for the Family and Criminal Courts’ assigned counsel panels in its capacity as a member of the Departmental Advisory Committee to the Family Court, and the Departmental Central Screening Committee of the Criminal Courts Panel Plan of the Assigned Counsel Plan pursuant to 22 NYCRR 611.5, 612.3 and 612.8. This Court, therefore, finds NYCLA has suffered an injury in fact within the zone of interests of the court rules implemented to facilitate effective assistance of counsel to the indigent from the statutes setting the compensation rates. NYCLA’s injury is certainly different from that of the public at large, and substantially different from most other bar groups and associations in that it plays a vital role in how the Family Court and criminal justice system affect the poor in New York City.
The prudential limitation which prohibits a litigant raising the legal rights of another does not prevent, in an appropriate case, recognition of third-party standing. The ban on adjudicating generalized grievances that are more appropriately ad *783 dressed by the representative branches of government is not applicable here, where NYCLA alleges a systemic problem directly related to the monetary cap provisions and its inability to fulfill its assumed obligations, and as such NYCLA’s claim is not a general grievance, and one this Court finds justiciable. (See, Matter of Boung Jae Jang, McCain, and McCoy, supra.)
The measure of the relationship between the litigant and the third party is whether “the enjoyment of the right [of the third-party indigent clients] is inextricably bound up with the activity the litigant [NYCLA] wishes to pursue.” (Singleton, supra at 114.) The relationship here is that of an essential bar association participant in the Assigned Counsel Plan and the assigned 18-B panel members’ clients. The right of third-party indigent clients is the assignment of counsel, at an appropriate stage of the litigation, who will provide meaningful and effective legal representation. A significant portion of NYCLA’s activities are toward that end. NYCLA has played a significant and unique role in the creation and implementation of the Assigned Counsel Plan that reflects its history and charitable purposes in the monitoring and oversight of the Plan, and the training of its attorneys. This Court finds the third parties’ rights to assigned counsel to be inextricably intertwined with the litigant’s activities toward the provision of same, thereby making NYCLA an effective proponent of the rights of the third-party children and indigent adults, despite any allegations of conflict of interests with its members or its members’ clients.
The ability of the rightholders to vindicate their own rights rests on: “[i]f there is some genuine obstacle to such assertion * * * the third party’s absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right’s best available proponent.” (Singleton, supra at 116.) NYCLA alleges that the rightholders would not be able to assert their own rights because of the magnitude of the litigation in question and the lack of resources available to them. The State correctly points to the remedies available to the third-party nonlitigants: CPL 470.05 — direct appeal, CPL article 440 — postconviction motions, and 28 USC § 2254 — habeas corpus petitions. However, several factors support granting NYCLA third-party standing. First, this case strikes at the monetary cap provisions which may have a profound impact on the rights and interests of indigent adults accused of crimes, and indigent litigants appearing in Family Court. Second, these *784 indigents lack the resources and experience to pursue claims for ineffective assistance of counsel. Third, claims for ineffective assistance of counsel can be raised only after a court has made an adverse determination or conviction. These factors prevent the resolution of the systemic problem prima facie presented here.
The last consideration requires the third party to show its rights or interests will be diluted or adversely affected if the litigation is not permitted to proceed. The State contends, as before, that the third parties can pursue postconviction remedies without dilution of their rights or interests. NYCLA alleges that the constitutional rights of the children and indigent adults are being infringed upon by the critical decrease in the number of available panel attorneys and the continuing increase in the demand for assigned private counsel. The substantial empirical evidence submitted by NYCLA provides strong indication that the third parties’ rights and interests will be protected by this litigation. This consideration, therefore, also weighs in favor of granting NYCLA third-party standing.
NYCLA also claims organizational standing to assert the rights of its member attorneys who are members of the Assigned Counsel Plan. Associational or organizational standing requires that the litigant organization shows it has direct standing, and that: (1) some or all its members have direct standing to sue; (2) the interests it asserts are germane to its purposes; and (3) neither the asserted claim nor the appropriate relief requires participation of the individual members. (See, Matter of Dental Socy. v Carey, 61 NY2d 330; Society of Plastics Indus. v County of Suffolk, supra.) This Court finds NYCLA has organizational standing.
This Court’s determination that NYCLA has direct standing to obtain third-party standing provides the equivalent basis to find that NYCLA has direct standing to assert organizational standing. Accordingly, NYCLA members who are panel members of the Assigned Counsel Plan and/or the Family Court Law Guardian Plan have suffered injury within the zone of interests protected by the statute — in the instant matter: County Law § 722-b; by extension the monetary caps in Judiciary Law § 35 (3); and the court rules regulating attorney professional conduct. Criminal defense attorneys have fiduciary obligations to their clients in their capacity as officers of the court, including a duty of loyalty, a duty to avoid conflict of interest (see, 22 NYCRR 1200.20, 1200.24), and a duty to *785 investigate the facts, the controlling law and to zealously advocate the litigant’s cause. (See, 22 NYCRR 1200.32.) NYCLA submits affidavits and affirmations from three of its members who currently serve as assigned private counsel in Family and Criminal Court proceedings, two members who are former or inactive members of the Family and Criminal Court panels, and two members who serve on the Central Screening Committee for the First Judicial Department. As set forth in their affidavits, the compensation rates and potential breach of professional responsibilities place them at risk of rendering ineffective assistance of counsel. The affirmation of Raymond Loving avers:
“I often do not have the time or opportunity to perform my own investigation of the facts of my clients’ cases or personally interview significant witnesses. Similarly, I have neither the time nor the resources for extensive legal research or lengthy motion papers and at times am unable to fully prepare for trial.” (See, affirmation 12.)
The affirmation of Daniel J. Ollen states:
“I seldom had the opportunity to fully investigate the facts of my clients cases, and I had neither the time nor the resources for extensive legal research or lengthy motion papers.” (See, affirmation 11.)
NYCLA’s members’ injury in fact is their inability to comply with their obligations to their clients, subjecting them to possible sanctions and ethical violations. These affirmations sufficiently establish that the current rate of compensation and the severe shortage of assigned counsel cause harm and injury to NYCLA’s members who serve as assigned counsel, including pressure from judges and court officers to accept additional case assignments despite an already heavy case load, and high case loads that impair their abilities to effectively represent their clients, exposing them to possible sanctions. Accordingly, this Court finds NYCLA members have suffered injury in fact.
The injury in fact suffered by the NYCLA members is within the zone of interests protected by County Law § 722-b, Judiciary Law § 35 and the various court rules. The State argues it is exclusively the nonlitigant indigent, and relies on New York State Assn. of Criminal Defense Lawyers v Kaye (supra [Kaye hereinafter]) for the proposition that NYCLA is not within the zone of interest required to confer standing. In Kaye the Supreme Court of Albany County granted a bar association standing in its attempt to bring a CPLR article 78 petition *786 challenging an administrative order set forth by the Administrative Board of the Courts, which includes the four Appellate Division Presiding Justices and Chief Judge Judith S. Kaye, that had approved a reduction in a proposed fee schedule applicable to assigned private counsel in capital cases. The bar association alleged, based on a single self-generated survey, that reduced fees would impinge on a capital defendant obtaining effective assistance of counsel. The Appellate Division, Third Department, reversed, holding that the legislative intent of Judiciary Law § 35-b (5) (a) was “to ensure that qualified attorneys are available to represent [capital] defendants.” (Kaye, supra at 17.) The injury claimed by the attorneys was monetary, and “therefore * * * not within the zone of interest required to confer standing.” (Id.)
Unlike Judiciary Law § 35-b (5) (a), which imposes on each screening panel of the respective Appellate Divisions the obligation to promulgate and periodically update a schedule of fees to be paid attorneys with the approval of the Administrative Board, County Law § 722-b provides a statutory cap and fixed rates, and was designed to ease the burden of lawyérs who serve, rendering Kaye distinguishable. (See generally, People v Perry, 27 AD2d 154 [P Js 1st & 2d Depts]; Werfel v Agresta, supra.)*
Therefore, this Court finds NYCLA’s members fall within the zone of interests of the statutes and related court rules, satisfying the first requirement of organizational standing that one or some of its members have direct standing to sue. In addition, the NYCLA members’ injury is different from the public at large because they are an advocate class enlisted to defend the indigent.
The interests NYCLA seeks to protect are germane to its organizational purpose. NYCLA was created nearly 100 years ago with the purpose of securing legal assistance for children and indigent adults. Although the State argues that the existing statutory scheme neither requires that legal services be provided through assigned counsel panels, nor mandates that any particular local bar association take part in the First Department screening panels, the State does not dispute that the interests NYCLA seeks to protect are germane to its *787 organizational purpose. Finally, the State does not seriously refute NYCLA’s claim that its 18-B panel members’ participation is necessary.
This Court further finds, traditional standing principles aside, based on NYCLA’s role as an essential participant in the assigned counsel system, coupled with the vast amount of empirical data submitted, that to deny NYCLA standing would erect an impenetrable barrier to any judicial scrutiny of legislative action or inaction in this case, where presumptively innocent citizens are subjected to increased risks of adverse adjudications and convictions merely because of their poverty. The State’s failure to properly fund its obligation to the indigent has an adverse impact on how our criminal justice system functions in New York. (See, NY Const, art VI, § 29.) Accordingly, under the liberalized recognition of standing announced in Boryszewski v Brydges (37 NY2d 361), this Court cannot ignore that if NYCLA is denied standing, it would exempt from judicial review the failure of the State to comply with its statutory and constitutional obligations. (See, Grant v Cuomo, 130 AD2d 154, 158.)
The State contends the Governor is not a proper party to this lawsuit because he plays no role in the implementation of the statutes governing the provision of assigned counsel to children and indigent adults. NYCLA points to the Governor’s comments, reported in the media, coupled with the state constitutional provision that the Governor shall faithfully execute the laws. (See, NY Const, art IV, § 3.) The test is whether NYCLA has alleged a sufficient nexus, independent of the general duty to enforce state laws, between the Governor and the statute alleged to be unconstitutional. (See, Gras v Stevens, 415 F Supp 1148, 1153.) This Court finds the allegations in the complaint do not draw a sufficient connection between the Governor and the alleged unconstitutional conduct of the state to conclude that the Governor, independent of the State of New York, is a real party in interest, requiring his removal as a party to this action.
A motion to dismiss a complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7) must be construed in the light most favorable to the plaintiff and all factual allegations accepted as true. (See, Leon v Martinez, 84 NY2d 83, 87-88.) NYCLA’s eight of nine causes of action against the State allege that “failure to provide sufficient compensation to private counsel” in County Law § 722-b, Family Court Act § 245 (b) and Judiciary Law § 35 (3) has resulted in “systematic *788 deficiencies in the assigned counsel system” in the Supreme, Criminal and Family Courts in New York City, and a “risk” that indigent adults and children “will be denied their rights to meaningful and effective assistance of counsel and due process of law,” thereby violating the rights of children and indigent adults under article I, §§ 5 and 6 of the New York State Constitution (first, third, fifth and seventh causes of action) and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution (second, fourth, sixth, seventh and eighth causes of action). Additionally, NYCLA alleges, in its ninth cause of action, a claim for tortious interference with contract, alleging that the State’s “intentional and persistent failure” to provide higher statutory rates of compensation for assigned counsel in County Law § 722-b and Judiciary Law § 35 (3) has impeded its obligation to render the Assigned Counsel Plan to provide and maintain a list of private attorneys who, in NYCLA’s view, are capable of representing children and indigent adults in the Family, Supreme and Criminal Courts in New York City.
NYCLA’s cross section of empirical evidence includes a report, incorporated in the complaint, by Chief Administrative Judge Jonathan Lippman, and Deputy Chief Administrative Judge for Justice Initiatives Juanita Bing Newton, detailing the current crisis in the assigned counsel program: Assigned Counsel Compensation in New York: A Growing Crisis (Jan. 2000) (www.courts.state.ny.us/reporter/webdocs/18b.htm/g). In addition, NYCLA submitted official statistics, reports from independent groups, and other material which outlined, in painstaking fashion, the shortage of active panel attorneys and how they are overburdened. The submissions also showed the adverse effects on juvenile delinquency cases, abuse and neglect proceedings, appellate backlogs, arraignment overload, the problem of uncertified panel counsel, prolonged delays, and how it relates to the current 18-B compensation rates.
Accordingly, the State’s motion to dismiss the first eight causes of action is denied. However, the ninth cause of action for tortious interference with a contract is dismissed.
The State contends that the complaint fails to allege the existence of a contract between NYCLA and the City of New York, and that there is no cognizable claim of tortious interference with the contractual relationship in New York where the plaintiff is the breaching party. NYCLA alleges the existence of a contract between the various bar associations and the City of New York in the form of the Assigned Counsel Plan.
*789 A prima facie case for tortious interference requires: (1) the existence of a contract; (2) defendant’s awareness of the contract; (3) defendant’s intentional inducement of the contract’s breach; (4) actual breach; and (5) damages. (See, Kaufman Org. v Graham & James, 269 AD2d 171, 173.) Claims of tortious interference can only be made where there is a claimed interference with a contractual relationship or a prospective economic advantage. (See, Snyder v Sony Music Entertainment, 252 AD2d 294, 299.) Here, there is no contractual relationship between the City of New York and NYCLA, of which the State would be considered an interfering third party, as the relationship is not one rooted in a pecuniary interest. NYCLA’s obligation pursuant to the court rules to provide a list of competent attorneys, coupled with its status as an original drafter of the Assigned Counsel Plan, does not establish a contractual relationship. A binding contract requires mutuality of consideration; that is, each party must furnish consideration to the other, or undergo a detriment. (See generally, Non-Linear Trading Co. v Braddis Assocs., 243 AD2d 107.) There was no bargained-for exchange between the parties here. NYCLA’s obligations under the Assigned Counsel Plan derive from its stated goal “of promoting the public interest * * * by arranging for the provision by its members of free legal services for indigent, low income or other persons in need” as contained in its certificate of incorporation. NYCLA’s assumed duties, codified in the court rules, do not create a contract within the meaning of tortious interference, and in the absence of a contractual relationship, there can be no breach. (See, NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 620.) Accordingly, NYCLA’s tortious interference claim is dismissed.
Therefore, it is ordered that the branch of defendants’ motion to dismiss the complaint pursuant to CPLR 3211 (a) (3) and (7) is denied; and it is further ordered that the branch of defendants’ motion to dismiss plaintiffs ninth cause of action based upon tortious interference with contract is granted; and it is further ordered that the branch of defendants’ motion to strike Governor George E. Pataki as a defendant is granted; and it is further ordered that the caption hereinafter read: “new york county lawyers’ association, Plaintiff, against THE STATE OF NEW YORK, Defendant.”

 See Bill Jacket (L 1965, ch 878) where the proponent of the bill, Assemblyman Richard J. Bartlett, in a letter dated July 1, 1965, urging the Governor’s signature, described the purpose of County Law § 722-b as one that “will simply provide the means by which attorneys will be compensated.”